**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**John M. BUISHAS, Charles R. Gies
and William J. Michael,
Defendants-Appellants.**

Nos. 85–2139 to 85–2141.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1986.

Decided May 30, 1986.

Christopher Bohlen, Kankakee, Ill., Thomas J. Fahey, Warren E. White, Danville, Ill., for defendants-appellants.

Frances C. Hulin, Asst. U.S. Atty. Danville, Ill., for plaintiff-appellee.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

This case consolidates the appeals of three criminal defendants: John M. Buishas, Charles R. Gies, and William J. Michael. Buishas and Gies were both convicted by a jury of conspiracy to possess marijuana in excess of fifty kilograms with the intent to distribute, in violation of 21 U.S.C. § 846, and distribution of marijuana in excess of fifty kilograms, in violation of 21 U.S.C. § 841(a)(1). Michael was convicted of only the latter charge. Buishas and Gies were each sentenced to three years imprisonment to be followed by five years probation. Michael was sentenced to two years imprisonment to be followed by five years probation. The defendants make nu-

merous arguments on appeal, none of which we find persuasive, and accordingly we affirm.

## I.

Some time in 1983, Buishas engaged in a marijuana transaction in which, in his words, he brokered the sale of a large quantity of marijuana from a source in California to an individual in Illinois, Dale Lott. Lott then "fronted" the marijuana to another individual, Donald McAlvey, who was arrested in February 1984 by agents of the Illinois Department of Criminal Investigations (DCI). In the summer of 1984, Buishas periodically contacted McAlvey about his failure to pay for the marijuana; the source in California was apparently unhappy about not being paid the $15,000 it was to receive for the transaction.

In September 1984, McAlvey contacted DCI Agent William Willis and informed him of the phone calls from Buishas. Willis devised a sting operation based on the ruse of selling marijuana to the source in California through Buishas. On October 16 and 20, 1984, McAlvey met with Buishas in Buishas's home to persuade him to meet with Willis, whom McAlvey represented as a supplier of marijuana. Willis then telephoned Buishas several times to arrange a meeting. On October 25, Buishas and Willis met at Waukegan Airport in Waukegan, Illinois. Willis represented to Buishas that he transported marijuana with his private aircraft and pilot and provided information about the prices for and amounts of marijuana he could supply.

Buishas told Willis that he was interested in brokering marijuana to clear up a $15,000 debt he owed from a previous marijuana transaction. He stated that in the past he had moved 5,000 pounds of marijuana in a two week period and had been "dealing with these guys" for a long time. Buishas told Willis that he would like to "start out small" to see how the operation went and requested some samples of the marijuana to show his friends. Buishas said he would discuss the matter further with Willis in the future, and the two de-parted. This meeting was recorded on videotape and audiotape by DCI agents.

On November 14, 1984, Willis and Buishas met at Buishas's home after arranging a meeting over the telephone. At this meeting, which Charles R. Gies attended, Willis gave Buishas two one-ounce packets of marijuana as samples for his associates. Buishas opened one of the packets and smoked a small amount of marijuana. Buishas then gave Willis a sample of the type of marijuana he was expecting. Laboratory tests later identified this substance as cannabis. Buishas informed Willis that he would send one of the packets Willis gave him to an associate in Minnesota and the other to an individual in the Chicago area. This meeting was recorded on audiotape.

After the November 14 meeting, Willis and Buishas discussed the marijuana transaction over the telephone. The possibility emerged that Buishas and his associates could deliver marijuana to Willis, rather than vice versa as originally discussed. On January 18, 1985, Buishas and Willis met at a hotel room in Bradley, Illinois. After a discussion lasting approximately thirty minutes, Buishas and Willis left the room to meet Gies in the hotel bar. Gies and Willis then returned to the hotel room, where Buishas met them several minutes later with approximately a pound and a half of marijuana in several packages. The three men discussed the samples and prices for varying amounts and qualities of marijuana. After nearly an hour, the three agreed to a specific amount and price for a sale of marijuana to Willis. The meetings in the hotel room were recorded on audio and videotape.

Following the January 18 meeting, Buishas and Willis renegotiated the deal over the phone and made specific arrangements for delivery of the marijuana. On January 28, 1985, Willis was met in the Bradley hotel room by William Michael. Michael brought with him an amount of marijuana in several numerically marked bags, which Michael told Willis he had been asked to transport. Michael then telephoned Gies

and let Willis speak to him. Willis and Gies discussed the samples and made final arrangements for the delivery of a much larger amount of marijuana to the hotel. Michael then left the hotel room. This meeting was also recorded on audio and videotape.

After several hours passed without delivery of the marijuana, Willis phoned Buishas, who agreed to meet with Willis to assure that the transaction was completed. Buishas arrived at the hotel room that evening, and he and Willis were joined by Michael a short time later, who told them "the load is here." Michael then took Willis to a vehicle where Willis observed a large amount of marijuana (later determined to be 89 kilograms). Willis then signaled to fellow agents covertly observing the transaction, who arrested Buishas and Michael and seized the marijuana.

## II.

■ Buishas first contends that he was precluded from presenting his defense of entrapment by the trial judge's limitation of the number of recorded conversations that were played to the jury. The trial judge excluded many of the recordings made after November 14, 1984 as irrelevant to Buishas's predisposition to commit the crimes with which he was charged because these discussions occurred subsequent to the agreement to commit the criminal acts; that is, after Buishas's predisposition to commit the crimes had already been shown. TR. 413. Buishas argues that these later recordings were relevant to his state of mind prior to the initial opportunity for criminal conduct.

We first note that a district court has "broad discretion when assessing the admissibility of proffered evidence" and may be reversed only upon a showing of abuse of discretion. *United States v. Latham*, 754 F.2d 747, 751 (7th Cir.1985). Buishas has failed to show that any of the excluded recordings were relevant to the issue of predisposition. The earlier recordings, which were played in full to the jury, amply exhibit Buishas's willingness to engage in

an illegal drug transaction from the outset of his contact with Agent Willis, and Buishas is unable to show that any of the later recordings indicate a contrary intention. His assertion that he was just "playing along," presumably even through the delivery of the 89 kilos of marijuana, is not borne out by any evidence. For example, his claim that "voice inflections" and "hesitancies" revealed only by the later tapes evince his unwillingness to participate in the crime was rejected by the trial judge, who stated: "I have been listening assiduously ... for what you claim are voice inflections and inuendos. I cannot hear them." TR. 415. The trial judge therefore did not abuse his discretion by refusing to play these tapes to the jury.

It is also of no import, contrary to Buishas's assertion, that the sting operation changed from a drug selling to a drug buying scam. Buishas was clearly interested in engaging in a criminal drug transaction from the beginning in his self-described role as a "broker;" in this middleman's role, it made no difference to Buishas who was buying or selling. We find that the trial judge made every effort to allow Buishas to present evidence of entrapment, and conscientiously gave Buishas the benefit of the doubt in playing some of the later tapes to the jury, but our review of the record indicates that these later tapes did not support his theory of entrapment.

■ Buishas also claims that the trial judge erred by refusing to instruct the jury on the defense of entrapment. As in *United States v. Rodgers*, 755 F.2d 533, 550–51 (7th Cir.1985), however, we find that the refusal to offer this instruction to the jury was proper because of the absence of any evidence showing that Buishas was not predisposed to commit the crimes with which he was charged. As noted above, the tapes did not indicate any unwillingness on the part of Buishas to engage in the criminal venture, and his actions certainly belie any claim of reluctance. The mere assertion that he was only "playing along" is not sufficient to show a lack of predisposition.

We therefore find that the trial judge properly refused to instruct the jury on the defense of entrapment.

Similarly, we reject defendant Gies's contention that he was entitled to a jury instruction on the defense of entrapment. Gies argues that if Buishas was entitled to an entrapment instruction, so was he, relying on a theory of "vicarious entrapment." Because we reject Buishas's assertion that he was entitled to such an instruction, Gies's contention necessarily fails even if we were to accept the theory of vicarious entrapment, which has no precedent in this circuit.

## III.

■ Buishas urges us to reverse his conviction and enter a judgment of acquittal on due process grounds or pursuant to our "supervisory powers" because the government's conduct in operating the sting was outrageous. Specifically, Buishas finds it outrageous that Agent Willis delivered two packets containing approximately 69 grams of marijuana to Buishas during the course of the sting operation. This marijuana, as stated in the facts above, was requested by Buishas as a sample to show his confederates.

In *United States v. Bounos*, 730 F.2d 468, 470 (7th Cir.1984), this circuit approved of the standard set forth by the Third Circuit in *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978), which held that "in evaluating whether government conduct is outrageous, the court must consider the nature of the crime and the tools available to law enforcement agencies to combat it." *Twigg*, 588 F.2d at 378 n. 6. *Bounos* also noted the characterization in *Twigg* of an illegal drug sale as a "fleeting and elusive crime" which may require the government to become involved in the crime itself in order to combat it. *Bounos*, 730 F.2d at 470 (citing *Twigg*, 588 F.2d at 378 n. 6).

In *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), the Supreme Court did not find the government's conduct outrageous in a situation where the degree of government involvement in the criminal conduct was similar to, if not greater than, the degree of government involvement in this case. In *Hampton*, the defendant was convicted of distributing heroin after a government informant sold the defendant the heroin which he, in turn, resold to government agents. We do not find that the government's conduct in this case in delivering two relatively small samples of marijuana (small at least in comparison to the 89 kilos later confiscated by the government), which were requested by a target of the investigation and were resonably necessary to the successful completion of the sting operation, was so outrageous as to violate due process or to compel this court to take any extraordinary action. Although Buishas's rather incongruous sensibilities may have been shocked by the government's conduct, the conscience of this court is not.

Buishas also contends that the government's conduct was outrageous in that McAlvey, Agent Willis's informant, issued "veiled threats" to Buishas in a telephone conversation after Buishas received the marijuana samples and the transaction appeared to be stalled. We have reviewed the transcript of this conversation and conclude that, like Buishas's supposed reluctance to engage in an illegal drug transaction, these "threats" were so heavily veiled as to be non-existent. We therefore reject this argument that the government's conduct was outrageous.

## IV.

Defendant William Michael contends that the trial court erred in failing to grant him a trial separate from Buishas and Gies. Michael argues he was deprived of "substantial rights," though he does not specify what these rights are, because the "vast majority" of the evidence presented by the government concerned Buishas and Gies, and the jury attributed their "bad acts" to him. Michael claims that the fact that the jury did not find him guilty of the conspiracy charge, but only of the distribution charge, is evidence of this unfair prejudice.

A trial judge's ruling on a motion for a separate trial will not be overturned absent a clear abuse of discretion. *United States v. Papia*, 560 F.2d 827, 836 (7th Cir.1977). "To be entitled to a severance, a defendant must show that he will be unable to obtain a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal." *Papia*, 560 F.2d at 836. We must also give deference to the "strong public interest" in joint trials of defendants indicted together, "particularly where, as here, a conspiracy is charged and may be proved by evidence that arises out of the same act or series of acts." *Id.* at 836–37. We see no indication that Michael did not receive a fair trial; contrary to his assertion, the fact that he was acquitted of the conspiracy charge indicates that the jury assessed Michael's guilt "solely on the basis of the evidence admissible against him," which is the ultimate question in determining the propriety of a joint trial. *Id.* at 837.

Michael further contends that he was denied a fair trial because the jury viewed a videotape of a meeting between Agent Willis, Buishas, and Gies in which Buishas referred to a person named "Billy" as someone he could trust to handle the money for the marijuana. Michael argues that he was denied an opportunity to cross-examine Buishas or Gies, who did not testify, as to whether the "Billy" to whom Buishas referred was William Michael, and that this violated the holding in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton*, however, does not require the exclusion of statements by co-defendants made in furtherance of a conspiracy. The trial judge refused to instruct the jury to consider the tape only against Buishas and Gies because a conspiracy had been shown to exist and it was possible that "Billy" referred to William Michael. TR. 75. Buishas's statement was plainly in furtherance of a conspiracy in which the government sought to prove Michael participated. We therefore find that the trial judge did not violate *Bruton* by admitting this testimony into evidence against Michael.

Michael also challenges two other evidentiary rulings. First, Michael contends that he was denied the opportunity to question Agent Willis about his "willingness to lie in furtherance of his duties." Michael does not cite to any portion of the record to support his contention. To the contrary, the record reveals that Michael's attorney was in no way hampered in pursuing this line of questioning during his cross-examination of Agent Willis. TR. 146–57, 161–76.

Second, Michael asserts that testimony by Agent Willis that he was threatened by Michael just prior to the arrest was so prejudicial as to deny him a fair trial. Willis testified: "Mr. Michael said to me ... 'If this is an arrest, I am going to shoot you in the forehead.'" TR. 180. Michael argues that admitting this statement into evidence served no legitimate purpose and unfairly prejudiced him. This argument ignores the fact that the government elicited this testimony to explain a later statement made by Willis which was brought out on cross-examination by Michael's attorney. The trial judge therefore ruled that Michael's attorney "opened the door" to this testimony by his questioning on cross-examination and that the threat was relevant to explain Willis's later statement. The trial judge also stated that the threat was relevant because the defendants' attorneys were "making [their] clients out to be clean-cut guys" and the threat indicated "the kind of person Willis was dealing with." TR. 179. Finally, the trial judge concluded that the statement's relevance was not outweighed by its potential for prejudice. We find no abuse of discretion in the trial court's ruling.

Michael also contends that the trial court erred in admitting this testimony into evidence because Agent Willis knew that the statement was made in jest. Although the threat to shoot Willis in the head may have been enormously funny at the time it was uttered, the record indicates that Willis was not amused. At any rate, this assertion was a matter for Michael to develop on

recross-examination of Willis and for the jury to accept or reject, and does not militate against the statement's admissibility.

### V.

■ Michael contends that the government failed to present sufficient evidence that he delivered marijuana to Willis to sustain his conviction for distribution of marijuana. The evidence, viewed in the light most favorable to the government, shows that Michael arrived at the hotel with a small truck containing 89 kilos of marijuana, informed Willis that "the load is here," led him to the truck, opened the hatchback of the truck, and allowed Willis to inspect the marijuana. We find that this evidence was sufficient to support the conviction. Under 21 U.S.C. § 802(8), "delivery" may be "the actual, constructive, or attempted transfer of a controlled substance." Thus, it was not necessary for Michael to physically place the marijuana in Willis's possession in order to have made a delivery or, as Michael asserts, to allow Willis to drive away with the truck. *See United States v. Wigley,* 627 F.2d 224, 226 (10th Cir.1980) (evidence sufficient for conviction of distributing controlled substance where defendant participated in transporting drug, vouched for its quality, and allowed inspection of drug).

■ Gies and Michael both contest the trial judge's actions concerning the jury instruction on delivery. In his closing argument, Gies's counsel argued to the jury that no crime had occurred because there was only an attempted delivery, not an actual delivery. TR. 497–98. After the conclusion of his argument and out of the presence of the jury, the trial judge engaged in a lengthy colloquy with counsel about the inaccuracy of this statement during which he read the definition of "delivery" set forth in Section 802(8) and discussed instructing the jury as to constructive possession as it related to the delivery of the marijuana. The jury was then reconvened and Michael's attorney gave his closing argument, during which he also argued that there had been no delivery.

After Michael's attorney concluded his closing argument, the trial judge informed counsel that, after reflecting upon the matter, he would instruct the jury as to delivery only by reading the definition set forth in Section 802(8).

Gies contends that he was prejudiced in making his argument before the court proposed the additional instruction on delivery. In proposing the instruction, the trial judge stated: "I would be derelict indeed if I left the jury with the erroneous impression that delivery had to be physical, manual, and actual." TR. 522. Although Rule 30 of the Federal Rules of Criminal Procedure requires the court to inform counsel of its proposed action on jury instruction requests before closing argument, "the rule is not so inflexible as to restrict the trial judge in giving a supplemental or modified instruction designed to prevent the jury from becoming confused and deciding the case on a false basis." *United States v. Shirley,* 435 F.2d 1076, 1078 (7th Cir.1970) (modification of instruction in response to defendant's closing argument). Moreover, Rule 30 does not require the court to advise counsel prior to closing argument of every jury instruction that will be given. The rule requires only that the court advise counsel of its rulings on their requested instructions prior to closing argument. *United States v. Newson,* 531 F.2d 979, 983 (10th Cir.1976); *United States v. Clarke,* 468 F.2d 890, 892 (5th Cir.1972). For these reasons, we reject Gies's claim that he was prejudiced by making his argument before he knew the instruction would be given.

Michael contends that he was prejudiced in that he did not argue against constructive or attempted transfer, but argued that Willis did not have constructive possession of the marijuana, because the trial judge "stressed" the "possession aspect of delivery" in his discussion with counsel prior to Michael's attorney's closing argument. Michael argues that this prevented his counsel from arguing the case intelligently to the jury. Michael relies on the Tenth Circuit's holding in *Delano v. Kitch,* 542 F.2d 550 (10th Cir.1976), which reversed the trial

judgment because the differences between the proposed jury instructions and those actually given were so substantial that the defense counsel were not effectively informed of the content of the instructions actually given, and were thereby prevented from arguing their case intelligently to the jury. 542 F.2d at 555.

We do not agree with Michael that the court's discussion in regard to constructive possession and delivery prevented his counsel from arguing his case intelligently to the jury. The trial judge's discussion of constructive possession related to the transfer of the marijuana from Michael to Willis and included a reading of the definition of "delivery" set forth in Section 802(8), which was later given verbatim as the instruction. At the time of the discussion, Michael's attorney admitted that "it was not clear what instruction [the trial judge] was going to give." TR. 522. Thus, no proposed instruction had been formulated. Moreover, the colloquy between the trial judge and Michael's attorney shows that Michael's attorney possessed a thorough understanding of the legal definitions and principles discussed and their application to his defense. He prudently argued to the jury both that Willis never gained constructive possession of the marijuana and that no delivery occurred. We therefore do not find that Michael's attorney was prevented from arguing his case intelligently to the jury. In our view, Michael's attorney lost this case on the facts, not the law.

■ Both Gies and Michael also contend that the additional instruction prejudiced them in that it allowed the prosecutor to argue that their counsel had mischaracterized the law in an attempt to mislead the jury. We do not find any unfair prejudice in the prosecutor twice referring to their counsel's characterization of the law as inaccurate. The statement by Gies's counsel regarding delivery was legally inaccurate and the prosecutor was entitled to so argue. Moreover, the record indicates that the prosecutor did not state that the characterization of the law was a deliberate attempt to mislead the jury or otherwise seek to leave this impression with the jury. We therefore find no prejudice resulted from these statements.

## VI.

Michael and Gies both contend that they were unfairly prejudiced by the prosecutor's statement in her closing argument that Willis testified that Michael gave him the keys to the truck containing the marijuana. The defendants argue that this statement was prejudicial in that it tended to show that Michael did deliver the marijuana to Willis, but that the evidence showed that Michael did not give the keys to Willis. Although Willis's testimony as to this point is inconclusive, we find no evidence that Michael did not give him the keys. To the contrary, Michael's attorney stated in closing argument that in the tape recording of the attempted drug sale, Michael could be heard telling Willis: "I want you to go back in. We'll take care of this. Give me the keys." TR. 517. In view of this statement, we cannot accept the defendants' premise that the prosecutor was commenting on a fact not in evidence.

■ Last, all three defendants contend that the trial court erred in submitting two special interrogatories to the jury instructing it to find whether the amount of marijuana involved in counts one and four of the indictment amounted to more than fifty kilograms. Although as a general rule special verdicts are disfavored in criminal cases, *United States v. Jackson*, 542 F.2d 403 (7th Cir.1976), they are permitted when the information sought is relevant to the sentence to be imposed. *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir.1984). Here, the defendants' sentences depended on the amount of marijuana they were dealing, and we therefore find that the trial court's use of the special interrogatories was proper.

The convictions of Buishas, Michael, and Gies are

AFFIRMED.