UNITED STATES of America,
Plaintiff–Appellee,

v.

John L. BLACKMAN, Defendant–
Appellant.

No. 89–3582.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1991.

Decided Dec. 6, 1991.

Andrew B. Baker, Jr., Asst. U.S. Atty., Office of U.S. Atty., Dyer, Ind., David H. Miller, Asst. U.S. Atty., Office of U.S. Atty., Fort Wayne, Ind., argued, for plaintiff-appellee.

Suzanne Philbrick, Chesterton, Ind., argued, for defendant-appellant.

Before POSNER, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

A jury found the appellant, John L. Blackman, guilty on two counts of distribution of narcotics in violation of 21 U.S.C. § 841(a)(1). The district court judge entered judgment on Blackman's convictions, sentenced him to 60 months of incarceration on each distribution count to run concurrently, and fined him $10,000 on one count. In this appeal, Blackman requests that we reverse his conviction or, alternatively, vacate the $10,000 fine. For the reasons set forth in this opinion, we affirm the conviction and the fine.

## I. Background

*Facts*

At Blackman's trial, the government chiefly relied on the testimony of Ken Arthur, a police informant who had known Blackman for two and a half years. During the course of their acquaintance, Arthur had used cocaine with Blackman and had seen Blackman sell cocaine to others. In May of 1988, Arthur revealed information about Blackman to the Allen County Police Department, which had also received information regarding the defendant's activities from Crime Stoppers. In response to this information, Officer Scott Huffine formulated a plan to investigate Blackman using Arthur as the informant.

Sometime prior to September 9, 1988, Arthur contacted Blackman to purchase drugs from him. At that time, Blackman agreed to sell cocaine to Arthur, but Blackman questioned whether Arthur was working for the police. Arthur insisted that he was not connected with the police and used cocaine with Blackman to allay Blackman's

suspicions. On September 9, 1988, Blackman sold Arthur ⅛ of an ounce of cocaine for $225.00. On November 17, 1988, Blackman sold Arthur ⅛ of an ounce of cocaine for $200.00. On November 28, 1988, Blackman sold Arthur one hundred hits of LSD for $300.00. The members of the Federal Drug Task Force recorded each of these three sales with electronic surveillance equipment that Arthur carried.

Blackman presented an entrapment defense, testifying that he had sold drugs only to Arthur, only on the occasions mentioned in the indictment, and only after Arthur had pressured him. The government, however, presented rebuttal evidence on Blackman's predisposition. The government entered into evidence a black notebook that belonged to the defendant. Lieutenant Ralph West of the Allen County Police Department Narcotics Division testified that, based on his 14 years of experience in the narcotics division, he believed the notebook contained a record of narcotics and gambling debts. In addition, Arthur testified that Blackman had told him the book contained a record of people who owed Blackman money for narcotics or gambling debts and that he had seen Blackman make entries into the notebook after selling drugs.

The name "Scott L." appeared in the notebook with "$2,300" beside it. Although Blackman admitted knowing a Scott Larsh, he denied knowing who "Scott L." was and denied that he ever sold drugs to Scott Larsh. Scott Larsh, however, testified that he had known the defendant for a couple of years preceding the trial, that he bought drugs from the defendant during that period and that he still owed the defendant for his latest purchase.

The court gave an entrapment instruction to the jury. After deliberating, the jury found the defendant guilty on two counts of narcotics distribution.

At sentencing, the district court judge considered a Presentence Investigation Report prepared by the Probation Department and an addendum discussing the objections raised by Blackman. The district court judge sentenced Blackman to 60 months on two counts of distribution of narcotics to run concurrently. Based on both Blackman's assets and also his ability to earn income, the district court judge fined Blackman $10,000 on one count.

Blackman raises three issues on appeal. First, he maintains that the evidence at trial revealed that he was entrapped as a matter of law. Second, he maintains that the district court fined him $10,000 based on information that was clearly erroneous. Third, even if the information was not clearly erroneous, Blackman believes the district court should have offset the fine by the $18,000 seized from the defendant pursuant to a warrant the day of his arrest.

## II. Analysis

### A. Entrapment

Blackman's argument that he was entrapped as a matter of law fails. Under the law in this circuit, the government met its burden, the jury weighed the evidence, and the testimony of the government's witnesses was not incredible as a matter of law.

At Blackman's trial Blackman raised the entrapment defense and supported it by his own testimony that he had sold drugs only to Arthur and only after Arthur badgered him. The government then offered evidence contradicting Blackman's testimony. The defense of entrapment raises a question of fact for the jury. United States v. Fusko, 869 F.2d 1048, 1051 (7th Cir.1989) (citing Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988)); United States v. Lazcano, 881 F.2d 402, 406 (7th Cir. 1989). Therefore, the court gave the jury an entrapment instruction, but the jury rejected entrapment as a defense and convicted Blackman. Nevertheless, apparently unable to find a better-founded challenge to the proceedings below, Blackman has chosen to argue before this court that the evidence at trial established entrapment as a matter of law. Blackman's argument would succeed only if the government failed to provide sufficient evidence for a rational trier of fact to conclude beyond a

reasonable doubt that the defendant was not entrapped. *See United States v. Carrasco*, 887 F.2d 794, 814 (7th Cir.1989) (citations omitted) (defendant who relied on lack of predisposition to establish entrapment could establish entrapment as a matter of law only if lack of predisposition was apparent from the uncontradicted evidence).

■ This court has set forth the principles governing the defense of entrapment in numerous cases. Entrapment has two related elements: (1) government inducement of the crime and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Fusko*, 869 F.2d at 1051.

> A defendant who wishes to assert the entrapment defense must produce not only evidence of the government's inducement, but also evidence of his own lack of predisposition. Once this has been accomplished, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was in fact predisposed *or* that there was no government inducement. *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir. 1989); *United States v. Hawkins*, 823 F.2d 1020, 1024 (7th Cir.1987); *United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir.), *cert. denied [sub nom., Gonzalez v. United States]*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985); *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984).

*United States v. Rivera–Espinoza*, 905 F.2d 156, 158 (7th Cir.1989) (emphasis added). Therefore, while the defendant must present evidence of both elements, the government can defeat the entrapment defense by proving beyond a reasonable doubt either the absence of government inducement or the defendant's predisposition. Where there is sufficient evidence to establish that the defendant possessed the requisite predisposition, the entrapment defense is properly rejected without a separate inquiry into government inducement. *Carrasco*, 887 F.2d at 816 n. 29 (citing *Perez–Leon*, 757 F.2d at 871–72).

■ A predisposed defendant is one who is ready and willing to commit the offense.

*Id.* at 814. Five factors guide the court in assessing the evidence on the defendant's predisposition:

> "(1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government."

*Id.* at 814 (quoting *Fusko*, 869 F.2d at 1052).

In his appeal, Blackman focuses on evidence tending to establish the five predisposition factors. First, Blackman points to the testimony of several witnesses regarding his good reputation. Second, Blackman reminds this court that Arthur requested the drugs. Third, Blackman maintains that he did not profit from the sales for which he was indicted. Fourth, Blackman offers his own disputed testimony that Arthur pursued Blackman relentlessly before Blackman made the sales to Arthur. Fifth, Blackman complains that the government persuaded him to sell drugs by promoting the betrayal of a friendship.

■ To assess the defendant's challenge, we must view the evidence in the light most favorable to the government and must affirm the conviction if we find that a rational trier of fact could have found the requisite predisposition beyond a reasonable doubt. *Carrasco*, 887 F.2d at 814 (citing *Perez–Leon*, 757 F.2d at 871). We find that the government produced sufficient evidence at trial that a rational trier of fact could have found beyond a reasonable doubt that Blackman was predisposed to distribute narcotics. First, Arthur testified that Blackman had sold him drugs prior to September 1988; that Arthur had been present when the defendant sold drugs to others before September 1988; and that Blackman was never reluctant to sell him drugs. Second, Larsh testified that Blackman had sold him drugs prior to September 1988 and that Larsh still owed him money for the drugs. Finally, the

testimony regarding Blackman's black notebook indicated that Blackman had regularly sold drugs to others besides Arthur and profited from the distribution of narcotics. In short, the evidence did not suggest that Blackman was an innocent victim in whose mind the government implanted a disposition to distribute narcotics. *Cf. United States v. Gabriel*, 810 F.2d 627, 637 (7th Cir.1987) ("A predisposed defendant is one who is ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense.").

Informant Arthur unquestionably initiated the contacts with Blackman that led to the sales for which Blackman was convicted. However, "mere solicitation by itself by a government agent is not sufficient to establish the entrapment defense." *Perez–Leon*, 757 F.2d at 872. Although Blackman maintains that Arthur hounded him before he finally agreed to obtain the drugs, Arthur testified that Blackman was not reluctant to sell him the drugs. Faced with conflicting testimony, the jury chose to accept Arthur's testimony over that of Blackman. Credibility determinations lie in the province of the jury and absent "extraordinary circumstances" we will not reevaluate the testimony of a witness to determine his motives or otherwise measure his reliability. *United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989) (citation omitted).

■ Unable to produce uncontradicted evidence of entrapment, Blackman attempts to dislodge the testimony of the government's witnesses by arguing it was incredible as a matter of law. In so doing, Blackman grasps at straws.

To be incredible as a matter of law, a witness' testimony must be unbelievable on its face. In other words, it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all [citation omitted]. Mere inconsistencies in the witness' testimony do not render it legally incredible.

*Dunigan*, 884 F.2d at 1013. Blackman has presented nothing to this court that even suggests that the testimony of the government's witnesses suffered from any of the maladies described in *Dunigan*. Blackman argues that a rational trier of fact could not have believed Arthur's testimony that he was a 15 year drug user who quit drug use without entering a treatment program. Blackman points out that he impeached Arthur's testimony that there were no criminal charges pending against Arthur by producing a Notice to Appear addressed to Arthur. Blackman insists that the jury could not have believed Larsh or Arthur because they were drug users who had poor reputations for honesty and trustworthiness. The difficulty for Blackman is that the jury did believe Arthur and Larsh, as is the jury's prerogative. A defendant's strenuous efforts at impeaching a witness do not render the witness's testimony incredible as a matter of law. *See United States v. Lozoya–Morales*, 931 F.2d 1216, 1217 (7th Cir.1991) (mere inconsistencies in testimony are insufficient for reversal since credibility determinations will be left to the jury); *United States v. Grandinetti*, 891 F.2d 1302, 1307 (7th Cir.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1534, 108 L.Ed.2d 773 (1990) (citations omitted) (reversal is not required because the government's case includes testimony by an array of liars and scoundrels).

Blackman has failed to demonstrate that he was entrapped as a matter of law. The government produced evidence of Blackman's predisposition from which a rational trier of fact could conclude Blackman was predisposed, and Blackman failed to undermine the government's evidence by showing it was incredible as a matter of law. Therefore, we must affirm Blackman's conviction.

## B. Fine

■ Blackman maintains on appeal that the $10,000 fine was based on clearly erroneous information and that alternatively the district court should have credited the defendant with the $18,000 seized by police at the time of his arrest. Our review of

the district court's sentence is governed by a narrow standard set by Congress. We must affirm the decision unless it was "imposed in violation of law or as a result of an incorrect application of the sentencing guidelines" or "is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(f)(1) and (2); *United States v. Armond,* 920 F.2d 480, 481 (7th Cir.1990) (citations omitted). Furthermore, we have recognized that 18 U.S.C. § 3742(e) requires courts of appeal to give due regard to the district court's credibility determinations, accept the district court's findings of fact unless they are clearly erroneous, and defer to the district court's application of the guidelines to the facts. *Armond,* 920 F.2d at 481 (citing *United States v. Durrive,* 902 F.2d 1221, 1230 (7th Cir.1990)).

■■■ When imposing a fine, the sentencing judge must consider numerous factors specified in 18 U.S.C. § 3572(a) and Sentencing Guidelines § 5E1.2(d).[1] *United States v. Masters,* 924 F.2d 1362, 1369 (7th Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991). The

transcript of the sentencing hearing reveals that the district court judge properly considered two factors before imposing the $10,000 fine. Upon announcing the fine, the district judge stated that "[t]he defendant has assets but more importantly he has the ability to earn excellent wages to pay the obligation." A district judge may properly consider not only the assets and liabilities but also the earning capacity of a defendant when assessing a fine. 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d)(2). The sentencing judge correctly applied sentencing guideline considerations when determining the fine.

■■■ We next consider whether it was clearly erroneous for the district court to find that the defendant's assets coupled with his ability to earn excellent wages would enable him to pay the obligation. Blackman's brief on appeal to this court protests at length regarding the district court's evaluation of the defendant's assets and liabilities. He made these same arguments to the district court in his Responsive Pleading to the Presentence Investigation Report ("PSR") prepared by the Probation Office. In sum, Blackman argues (1) that the value of his business is overstated

---

1. 18 U.S.C. § 3572(a) reads as follows:

(a) **Factors to be considered.**—In determining whether to impose a fine, and the amount, time for payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a)—

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the defendant of illegally obtained gains from the offense;

(6) whether the defendant can pass on to consumers or other persons the expense of the fine; and

(7) if the defendant is an organization, the size of the organization and any measure tak-

en by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense and to prevent a recurrence of such an offense.

U.S.S.G. § 5E1.2(d) reads as follows:

(d) In determining the amount of the fine, the court shall consider:

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;

(2) the ability of the defendant to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;

(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

(4) any restitution or reparation that the defendant has made or is obligated to make;

(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;

(6) whether the defendant previously has been fined for a similar offense; and

(7) any other pertinent equitable considerations.

because intangible assets such as good faith were lost upon Blackman's incarceration, (2) that his accounts receivable became worthless upon incarceration since his debtors have stopped paying, and (3) that Blackman's part interest in his home was overvalued because of two mortgages. By Blackman's calculations, his total assets are worth $14,000 rather than $60,000 as estimated in the PSR. The Probation Office responded to each of Blackman's contentions in an Addendum to the PSR. In addition, the PSR and the Addendum show that Blackman has demonstrated a capacity to earn wages not only by operating his own used car business but also through other legal employment. Nothing in Blackman's Responsive Pleading to the PSR suggests that he will be unable to earn similar wages in the future and pay the fine in installments during his supervised release following imprisonment.

The district judge weighed the PSR and the defendant's objections, and our examination of the record reveals no clear error. At the sentencing hearing, before imposing the $10,000 fine, the district judge stated that he had considered the PSR, the Addendum to the PSR discussing Blackman's objections, and a letter from Blackman's counsel to the U.S. Probation Office. Blackman stated that he had no other objections and made no objections after the district judge announced the fine. Blackman is now asking us to second guess the district court after it has carefully weighed the same evidence that Blackman presents to us on appeal. This we will not do.

 Blackman's argument regarding the $18,000 seized at the time of his arrest is somewhat confusing and possibly conflicting. In order to off-set the $10,000 fine by the $18,000 seized at the time of Blackman's arrest, the district court would have to draw one of two conclusions: (1) that the $18,000 was Blackman's, that he would not recover it, and that therefore the government had already obtained a substantial portion of Blackman's assets, or (2) that Blackman did not have a claim to the $18,000, that the assessment of his assets in the PSR should not have included the

$18,000, and that consequently the fine was based on erroneous information. Neither of these positions has merit. First, if Blackman does have a claim to the $18,000, Blackman should have an adequate opportunity to pursue his claim in separate proceedings. Blackman's Responsive Pleading to the PSR notified the district court that the government seized $18,000 from Blackman's home at the time of his arrest and that "[d]efendant and other claimants have filed notice of claim and are awaiting action from the U.S. Attorney in Hammond." At oral argument, although Blackman's counsel stated that Blackman was unaware of any proceedings related to Blackman's claim to the $18,000, the government reported that proceedings were indeed pending. Second, if Blackman's assets have been overestimated by $18,000, Blackman has still failed to address the district court's determination that Blackman had the earning capacity to satisfy the obligation which served as the primary basis for the fine imposed by the district judge.

Blackman has not shown this court the clear error needed to reverse the fine imposed on him by the district court.

### III. Conclusion

For the foregoing reasons, we affirm the conviction of the defendant and the sentence imposed by the district court.