**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonio SANTIAGO–GODINEZ,
Defendant–Appellant.**

No. 91–3479.

United States Court of Appeals,
Seventh Circuit.

Argued April 20, 1993.

Decided Dec. 28, 1993.

724

Madeleine S. Murphy, Asst. State's Atty. (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Alan M. Freedman (argued), Freedman & Bornstein, Chicago, IL, for defendant-appellant.

Before COFFEY, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A two-count indictment charged Antonio Santiago–Godinez with conspiring to possess and distribute cocaine in violation of 21 U.S.C. § 846, and with knowingly and intentionally possessing and distributing approximately 1,999 grams of a mixture containing cocaine in violation of 21 U.S.C. § 841(a)(1).

The defendant filed a Motion for Disclosure of Favorable Information,[1] and a Motion to Dismiss the Indictment should the government fail to produce the informant to testify on the issue of entrapment. In response, the government filed a motion *in limine* seeking to exclude evidence of entrapment from defendant's trial. The government argued that even if the informant testified to the facts proffered by the defendant, the proffer did not present evidence of extraordinary induce-

---

1. Defendant's motion was denied as moot because the government agreed to comply with the discovery requested.

ment necessary to establish an entrapment defense.

After a pretrial hearing, the district court granted the government's motion *in limine*, ruling that the proffered evidence did not establish entrapment as a matter of law and further ruled that it would not give an entrapment instruction. Thereafter, the defendant pleaded guilty to one count of conspiracy to distribute cocaine, but reserved the right to appeal the denial of the entrapment defense pursuant to the conditional plea provision of Federal Rule of Criminal Procedure 11(a)(2).[2]

The sole issue on appeal is whether the trial court erred in granting the government's pretrial motion *in limine* and deciding the issue of entrapment as a matter of law, thereby, excluding presentation of evidence of entrapment to a jury.

## I. BACKGROUND

The following facts are gleaned from the defendant's pretrial proffer of testimony on the issue of entrapment. Santiago–Godinez, has lived all his life in Chicago, Illinois, in the building of the family-run grocery store where he worked until it closed in 1988. After the store closed, Santiago–Godinez was unemployed aside from helping out at his sister's bar on the weekends until it also closed in late 1990. For about six months, Santiago–Godinez worked as a maintenance laborer at $7.68 per hour until he was laid off. His financial situation rapidly deteriorated, and by late November of 1990, Santiago–Godinez was financially destitute.

Government informant, Reuben Alcantar, whom the defendant had know since about 1987, owned a bar which Santiago–Godinez frequented when he was unemployed in early 1990. In approximately August of 1990, Alcantar asked the defendant if he knew anybody who could obtain large quantities of cocaine. Alcantar initially requested five kilograms but indicated that his people could buy as many kilograms as Santiago–Godinez could produce. Santiago–Godinez told Alcan-

tar that he did not want to get involved. To which Alcantar responded, "C'mon, How long have we been friends? We're practically family." Alcantar told Santiago–Godinez that he knew people who would pay as much as $32,000 per kilogram, which Santiago–Godinez later learned from some friends was higher than the going rate of $27,000 or $28,000.

Santiago–Godinez also proffered that Alcantar would flaunt his wealth earned through drug-dealing and told Santiago–Godinez, "this is the kind of money you can have." Alcantar always carried a large quantity of cash and would often buy a round of drinks for everyone at the bar. Frequently he would drive by the bar in one of his three cars and wave. According to Santiago–Godinez, Alcantar stopped to see him about twice a week throughout the fall of 1990 and virtually each time, Alcantar would say that he needed the cocaine and would buy as much as Santiago–Godinez could obtain.

Santiago–Godinez claimed that he had rejected all of Alcantar's offers until November 30, 1990. On this date, Alcantar again approached Santiago–Godinez and told Santiago–Godinez that his people would purchase ten kilograms or more of cocaine a week and offered to pay more than the market price. He suggested that Santiago–Godinez could become very wealthy very quickly by doing business with him. With no other means of making the kind of money Alcantar was promising, Santiago–Godinez admitted that the promise of making more than $10,000 per week was very attractive, in particular at a time when he was financially destitute.

After this November 30th conversation with Alcantar, Santiago–Godinez checked with an acquaintance and learned that he could obtain two kilograms of cocaine for $26,000 each. Santiago–Godinez relayed this to Alcantar who agreed to purchase the cocaine at $27,500 per kilogram. Alcantar then telephoned the alleged buyer and conveyed a price of $28,500 per kilogram. At the conclu-

---

**2.** The parties concede their understanding that the issue reserved for appeal included the court's ruling on the motion *in limine* even though on its face, the plea agreement reserves the right to appeal the denial of the defendant's motion to dismiss the indictment due to the unavailability of the informant.

sion of the telephone call, Santiago–Godinez expressed reluctance to become further involved because he could not understand why Alcantar added money to the purchase price. Alcantar explained that the extra money was to be his profit, but he would give it to Santiago–Godinez to "sweeten" the deal. Alcantar also reminded Santiago–Godinez that his people were interested in future weekly cocaine deals. Santiago–Godinez then agreed to commence the deal.

On December 3, 1990, Santiago–Godinez and Jesus Perez met with Special Agent Tovar of the Drug Enforcement Administration ("DEA") who was acting undercover and agreed to sell agent Tovar two kilograms of cocaine. Santiago–Godinez gave agent Tovar the time and location where the transaction was to take place and further instructed that agent Tovar was to pay Santiago–Godinez $2,000 and the remaining $55,000 was to be paid to Perez. At the specified time and location, Perez displayed two bricked-shaped packages containing approximately two kilograms of cocaine to agent Tovar. Both Perez and Santiago–Godinez were arrested at the scene.

## II. ANALYSIS

### A. Standard of Review

■ As a threshold matter, we must determine the appropriate standard of review. The government characterizes the trial court's decision as an evidentiary ruling that the proffered evidence would be irrelevant on the issue of entrapment and argues that it should be reviewed under the abuse of discretion standard.[3]

■ Santiago–Godinez contends that the trial court's refusal to allow an entrapment defense should be reviewed de novo. This is the standard applied to review a district court's refusal to instruct the jury on entrapment, *United States v. Casanova*, 970 F.2d 371, 374 (7th Cir.1992); *United States v.*

*Marren*, 890 F.2d 924, 930 (7th Cir.1989), and is the appropriate standard to review an analogous pretrial determination that the defendant has not presented sufficient evidence to raise the defense of entrapment. *See United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir.1991) ("A district court's determination that there exists no evidence sufficient to raise a valid defense of entrapment is analogous to a determination that a jury instruction relating to a defendant's theory of the case is not warranted by the evidence"); *United States v. Fadel*, 844 F.2d 1425, 1434 (10th Cir.1988) ("Whether there is sufficient evidence to constitute a triable issue of entrapment is a question of law, reviewable ... on a *de novo* basis"); *see also United States v. Wright*, 921 F.2d 42, 44 (3d Cir.1990) (district court's refusal to instruct on the issue of entrapment on the ground that the defendant presented no evidence showing a lack of predisposition reviewed *de novo*), *cert. denied*, —— U.S. ——, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991). Santiago–Godinez presents the better argument. The legal sufficiency of a proffered defense is a question of law and therefore is reviewed *de novo*.

### B. Sufficiency of Evidence to Present Issue to Jury

In ruling on the government's pretrial motion *in limine*, the district court found that evidence proffered by Santiago–Godinez (and taken as true) was insufficient as a matter of law to entitle the defendant to raise an entrapment defense. On this basis the court held that it would not give an entrapment instruction:

[M]y problem with your proffer is maybe a few thousand dollars is a lot to a guy who is broke but, whether he is broke or not, I can't see anything in here that makes this extraordinary. There is a lot of money to be earned in drug deals, everybody knows it, and the fact that in this first deal he is going to get a couple grand plus whatever

---

3. The government's reliance on *United States v. Buishas*, 791 F.2d 1310, 1313 (7th Cir.1986), fails to support application of the abuse of discretion standard. In *Buishas*, the defendant was allowed to present evidence of entrapment to the jury. The trial judge, however, ruled to exclude some evidence as irrelevant to the defendant's predisposition to commit the offense. 791 F.2d at 1313. It was this ruling Buishas appealed as erroneous. We held that the trial court did not abuse its discretion in refusing to admit the evidence because Buishas had failed to show that any of the excluded evidence was relevant to the issue of predisposition. *Id.*

his little ordinary split is just doesn't strike me as extraordinary. It isn't even close.

. . . . .

I don't think there is enough to take it to the jury.

. . . . .

and I don't see the fact that he is going to give him a source that is going to allow this dealing to go on for a long time at the sort of little additional amount more than the normal profit to be what Judge Posner is talking about [in *United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991) ].

 The issue of whether there is sufficient evidence of entrapment to support submission of that defense to a jury typically arises after the evidence has been received at trial. "[U]nless it can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused." *Sherman v. United States*, 356 U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958). So, generally the question of entrapment is one for the jury, rather than for the court. *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). And whether or not an entrapment defense is available to a defendant is typically not amenable to pretrial resolution. This is because whether entrapment occurred is a factual issue; the defense of which is intertwined with the issue of intent and is often based on credibility determinations, which are traditionally reserved for jury resolution. *See Fadel*, 844 F.2d at 1430 and cases cited therein.

 Under the circumstances of this case, however, the district court accepted as true the proffered evidence of entrapment thereby erasing the issue of credibility. Thus, where the evidence proffered in response to a motion *in limine* raised by the government is insufficient as a matter of law

to support the affirmative defense, a pretrial ruling precluding the presentation of the defense at trial may be appropriate. *Cf. United States v. Bailey*, 444 U.S. 394, 415–17, 100 S.Ct. 624, 637–38, 62 L.Ed.2d 575 (1980) (to entitle defendant to present defense of duress or necessity to jury, his proffer must meet minimum standard as to each element of the defense so that if a jury finds it to be true, it would support an affirmative defense); *United States v. Goodacre*, 793 F.2d 1124, 1125 (9th Cir.) (defendant's *in limine* request regarding the availability of an entrapment defense was denied because the individual who allegedly induced the defendant into drug dealing was not a government informant), *cert. denied*, 479 U.S. 993, 107 S.Ct. 595, 93 L.Ed.2d 595 (1986). Moreover, as in *Goodacre*, it appears in this case that the pretrial determination of the availability of an entrapment defense was likely to eliminate the need for a trial. Indeed, once the issue was resolved against Santiago–Godinez, a conditional plea of guilty followed—reserving the entrapment issue for review on appeal.

 As a prerequisite for presenting the defense of entrapment to the jury, the defendant must produce sufficient evidence upon which a rational jury could have inferred that he was entrapped into committing the crime charged. *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886; *Casanova*, 970 F.2d at 375; *United States v. Teague*, 956 F.2d 1427, 1434 (7th Cir.1992); *United States v. Evans*, 924 F.2d 714, 716 (7th Cir.1991). Only if a defendant meets this threshold burden is he entitled to present the question of entrapment to the jury for resolution.[4] *See Mathews*, 485 U.S. at 63, 108 S.Ct. at 886; *Casanova*, 970 F.2d at 374–75; *United States v. Shukitis*, 877 F.2d 1322, 1330–31 (7th Cir.1989). Although the defendant's initial burden requires presenting more than a scintilla of evidence, the evidence need not be so substantial that if uncontroverted, a court

---

**4.** A defendant is entitled to a particular theory of defense if he satisfies the following four elements: (1) the defendant proposes a correct statement of the law; (2) the defendant's theory of defense is supported by the evidence; (3) the defendant's theory is not part of the government's charge; and (4) the failure to include an

instruction on the defendant's theory of defense would deny the defendant a fair trial. *United States v. Douglas*, 818 F.2d 1317, 1320–21 (7th Cir.1987); *see Casanova*, 970 F.2d at 374–75; *Marren*, 890 F.2d at 929; *Shukitis*, 877 F.2d at 1330.

may find entrapment as a matter of law. *United States v. Pratt*, 913 F.2d 982, 988 (1st Cir.1990), *cert. denied*, 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991).

### C. Entrapment Defense

 The defense of entrapment requires proof of two elements: (1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886; *United States v. Haddad*, 976 F.2d 1088, 1095 (7th Cir.1992); *Casanova*, 970 F.2d at 375; *United States v. Blackman*, 950 F.2d 420, 423 (7th Cir.1991); *Evans*, 924 F.2d at 716. For the defendant to raise the entrapment defense, he must produce sufficient evidence of both the government's inducement and his own lack of predisposition. Once the defendant has established both, the burden shifts to the government, which can defeat the entrapment defense by proving beyond a reasonable doubt either that the defendant was predisposed to commit the offense or the absence of government inducement. *United States v. Cervante*, 958 F.2d 175, 179 (7th Cir.1992); *Teague*, 956 F.2d at 1434; *Blackman*, 950 F.2d at 423; *United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985). Where there is sufficient evidence that the defendant was predisposed to commit the crime, however, the entrapment defense is properly rejected without a inquiry into government inducement. *United States v. Sanchez*, 984 F.2d 769, 773 (7th Cir.1993); *Casanova*, 970 F.2d at 377; *Cervante*, 958 F.2d at 178; *Blackman*, 950 F.2d at 420.

 Predisposition, which is the central element underlying the purpose of the doctrine of entrapment,[5] focuses on determining "whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the oppor-

tunity to perpetrate the crime." *Casanova*, 970 F.2d at 375 (quoting *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886); *Evans*, 924 F.2d at 717; *United States v. Rivera–Espinoza*, 905 F.2d 156, 158 (7th Cir.1990). A predisposed person is one "who takes advantage of an ordinary opportunity to commit criminal acts—not an extraordinary opportunity, the sort of thing that might entice an otherwise law-abiding person...." *Evans*, 924 F.2d at 717. In determining whether a defendant was predisposed to commit a crime, the following factors are relevant:

> (1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant engaged in criminal activity for a profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome by government persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*Haddad*, 976 F.2d at 1095; *Casanova*, 970 F.2d at 375; *Blackman*, 950 F.2d at 423; *Perez–Leon*, 757 F.2d at 871. Although none of these factors alone are determinative, the most important factor for the court to consider is whether the defendant exhibited a reluctance to commit the offense that was overcome by government inducement. *Casanova*, 970 F.2d at 375; *Perez–Leon*, 757 F.2d at 871; *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir.1983). This factor is often considered in conjunction with the nature of inducement or opportunity presented to the defendant in order to determine whether the inducement offered was such that it overcame an otherwise law-abiding person's reluctance. *See Casanova*, 970 F.2d at 376; *Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992) (the government must "prove that this predisposition was independent and not the

---

**5.** The purpose of the doctrine of entrapment: is to prevent the police from turning a law-abiding person into a criminal.... A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes. Such a person can be induced to commit a crime only by grave threats,

by fraud (the police might persuade him that the act they want him to commit is not criminal), or, in the usual case in which entrapment is pleaded, by extraordinary promises—the sorts of promises that would blind the ordinary person to his legal duties.

*Evans*, 924 F.2d at 717 (citations omitted).

product of the attention that the Government directed at the [defendant]").[6]

■ With respect to the first factor, Santiago–Godinez acknowledges that he was involved in two prior drug transactions, one of which resulted in a conviction. Although a prior conviction is not determinative of the defendant's character or reputation, it nonetheless establishes that Santiago–Godinez was a less than law-abiding citizen. *See Casanova*, 970 F.2d at 375. The parties also acknowledge that the suggestion of criminal activity was made by the government, and that the criminal activity was engaged in for a profit. Government-informant Alcantar initially approached Santiago–Godinez in the fall of 1990 about purchasing large quantities of cocaine. The mere fact that the government solicited the defendant's involvement, however, is not sufficient to establish entrapment. *See Blackman*, 950 F.2d at 424; *Shukitis*, 877 F.2d at 1331; *Perez–Leon*, 757 F.2d at 872.

■ The crux of defendant's entrapment defense appears to turn on evidence of inducement by the government and his predisposition to commit the crime, which, he asserts, present issues of fact for the jury to resolve. According to the proffered evidence, Alcantar told Santiago–Godinez that his people could pay $32,000 dollars a kilogram, which Santiago–Godinez learned was over-market price, and promised to buy as much as ten kilograms every week. Although Santiago–Godinez refused the invitation, Alcantar continued to ask Santiago–Godinez if he could procure cocaine. It is well established in this circuit, however, that the government's persistence in attempting to set up a drug transaction is not alone sufficient to carry the case beyond an ordinary opportunity. *Casanova*, 970 F.2d at 376; *Teague*, 956 F.2d at 1435; *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984). *But cf. Jacobson*, —— U.S. at ——, 112 S.Ct. at 1543 (defendant was "ready and willing to commit the offense only

after the government had devoted 2½ years to convincing him that he had or should have the right to engage in the very behavior proscribed by law").

Finally in November 1990, when Santiago–Godinez was in dire financial straits, he succumbed to the lure of potentially quick wealth and agreed to obtain cocaine for Alcantar. Without assistance or direction from Alcantar, Santiago–Godinez contacted a source for cocaine. He then told Alcantar that he could obtain only two kilograms at $26,000. Alcantar agreed to pay $27,500 per kilogram, but when informing the alleged buyer of the availability, he quoted the price at $28,500. Santiago–Godinez again expressed reluctance to continue involvement at this point, because he could not understand why Alcantar increased the price. Alcantar explained the increase was to be his profit, but that he would give it to Santiago–Godinez to "sweeten" the deal. Again Alcantar reminded Santiago–Godinez of the potential future sales of ten kilograms a week and of the quick money he would make. Presumably, Alcantar was convincing because Santiago–Godinez agreed to go ahead with the deal. Santiago–Godinez continues to argue, as he did before the district court, that Alcantar's promises of large-quantity deals at over-market prices creates, at a minimum, a jury question regarding whether this inducement is the type of extraordinary opportunity sufficient to overcome the reluctance of an otherwise law-abiding person to commit the crime induced.

In response, the government points to the fact that the defendant proffered no evidence that $2,000 profit was anything but ordinary for a broker's fee in a narcotics transaction. Similarly, the defendant proffered no evidence, aside from the defendant's hearsay testimony, that the informant's initial offer to pay $32,000 per kilogram was in fact above the market price. Whether the drug transaction was at or above market price is typi-

---

**6.** Appellee correctly notes that the existence of inducement was not disputed in *Jacobson,* however, contrary to the appellees argument, the Court focused on the nature and degree of inducement or opportunities presented by the government in order to determine whether the government proved beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by the government. *Id.* at ——––——, 112 · S.Ct. at 1540–43.

cally a factual issue for the jury to decide. However, as the district court noted, the actual cocaine transaction which the defendant participated in involved a sale price of $27,500 (or $28,500, if the extra profit is added in), which according to the defendant was the market value. Therefore, aside from the $2,000 profit, there was no actual additional inducement which would rise to the level of an extraordinary opportunity.

When ordinary profits of crime are incentive enough to commit crimes such a person is predisposed in the sense that he is ready and willing to commit the offense, all that is wanting is the opportunity. *Evans,* 924 F.2d at 717; *accord Casanova,* 970 F.2d at 376 (guns sold at market price provided no unusual inducement); *Teague,* 956 F.2d at 1434–35 (proposal to sell marijuana to defendant at market rates was merely an ordinary opportunity provided to defendant); *Gunter,* 741 F.2d at 153–54 (same). The fact that Santiago–Godinez could procure cocaine from a known source independent of any direction from the government as to who to contact demonstrates that he had the ability to commit the crime and thus was poised to engage in drug trafficking given the opportunity. This evidence shows that Santiago–Godinez merely took advantage of an opportunity to commit the crime and was predisposed in the sense that ordinary profits inured to drug trafficking were incentive enough to commit the offense—all that was wanting was the opportunity, which the government provided. *See Evans,* 924 F.2d at 717. Aside from merely being provided with an ordinary opportunity to profit from criminal activity, Santiago–Godinez's recent prior criminal drug conviction corroborate his lack of reluctance or his predisposition to commit the crime. *See Casanova,* 970 F.2d at 376 (noting additional evidence of defendant's lack of reluctance to support fact that defendant was merely presented with an ordinary opportunity to profit from the crime); *Teague,* 956 F.2d at 1435 (same). As noted by the Court in *Evans,* "[w]hen a person accepts a criminal offer without being offered extraordinary inducements, he demonstrates his predisposition to commit the type of crime involved," and thus, was not entrapped. 924 F.2d at 718. Here, the strength of the evidence demonstrating that Santiago–Godinez merely took advantage of an ordinary opportunity to profit from criminal activity, is sufficient to rebut his evidence of lack of predisposition and to support the conclusion that he was not entitled to an entrapment defense as a matter of law.

## III. CONCLUSION

As we have noted, under limited circumstances, the district court may decide prior to trial that a defendant is unable to produce sufficient evidence of entrapment to entitle him to present that defense to the jury. This case presented such appropriate circumstances; thus, the district court's decision to grant the government's motion *in limine* and prohibit the use of the entrapment defense was proper. The judgment of conviction entered pursuant to Santiago–Godinez's plea of guilty is AFFIRMED.