**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stacey GUNTER and Martin Manuszak,
Defendants-Appellants.**

Nos. 84–1101, 84–1102.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1984.

Decided Aug. 15, 1984.

**152**

Evan Spangler, Asst. U.S. Atty., R. Lawrence Steele, Jr., U.S. Atty., South Bend, Ind., for plaintiff-appellee.

Carmen M. Piasecki, Nickle & Piasecki, Charles A. Asher, South Bend, Ind., for defendants-appellants.

Before PELL and COFFEY, Circuit Judges, and DUMBAULD, Senior District Judge.*

PELL, Circuit Judge.

Defendants appeal their convictions for various cocaine trafficking offenses. At

* Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, sitting by des-

trial defendants admitted their involvement in the offenses, but claimed that they had been entrapped by the Government's confidential informant. The jury rejected this defense, and defendants now claim that there was insufficient proof to prove beyond a reasonable doubt that they were not entrapped. Defendants also claim that the court erred in not reducing their sentences in consideration of misconduct by the chief Drug Enforcement Administration (DEA) agent assigned to the case.

I Facts

During February of 1983 Patrick Gannon began to work as an informant for the DEA. As with many informants, Gannon was not motivated by a fervent desire to combat crime, but rather by a promise that his work would reduce the consequences of his own criminal conduct. In return for setting up purchases from drug dealers Gannon was to receive consideration on charges that he stole a late model Corvette Stingray automobile. Gannon also received $100 for every purchase.

From February 11, 1983, until April 5, 1983, Gannon made an unknown number of phone calls to defendant Manuszak. On April 5 Gannon called Manuszak and agreed to meet at a Shakey's Pizza to buy cocaine. Shortly thereafter Manuszak and defendant Gunter arrived at Shakey's Pizza and talked with Gannon. Gannon gave Manuszak $1,200. Manuszak showed Gannon several thousand dollars in cash. The group made arrangements to meet at Gunter's apartment to consummate the transaction. Gannon followed Gunter to her apartment, while Manuszak went to collect the cocaine. Manuszak arrived at Gunter's apartment with a large quantity of cocaine, half of which he gave to Gannon. Later analysis revealed that Gannon received 12.3 grams of cocaine.

On April 28, 1983 Gannon called Gunter and arranged to buy cocaine directly from her. Gannon and Gunter met at Shakey's

ignation.

Pizza that evening. Gunter sold Gannon a bag allegedly containing seven grams of cocaine for $600. The bag actually contained 4.5 grams of cocaine.

On June 15 Gannon called Manuszak and arranged to buy nine grams of cocaine for $1,200. Manuszak met Gannon at a nightclub that evening and delivered a bag of cocaine, which proved to contain only four grams of the drug. On June 22 Gannon called Manuszak and arranged to buy 14 grams of cocaine at Manuszak's house. Gannon in fact received 11.4 grams for $1,000.

The Government attempted to introduce into evidence a tape recording of the conversations between Gannon and defendants. Defendants successfully objected to admission of the tape on the basis of its poor quality. No evidence was introduced as to the nature of the conversations between Gannon and defendants other than the fact that they pertained to drug deals.

Cross-examination of Gannon and the DEA agents involved in the case revealed that defendants had no prior criminal records and that Gannon had no contact with Gunter prior to April 5. Gannon admitted that he initiated contact with the defendants. During cross-examination Gannon also admitted involvement in one drug deal with an acquaintance and admitted that agent Litton, who was in charge of the investigation of defendants, was aware of Gannon's criminal activity. Defense counsel had learned of this incident fortuitously through proceedings in another case. Agent Litton had failed to disclose the information to the United States Attorney.

II Sufficiency of the Evidence

 Defendants assert that they raised the defense of entrapment and that the Government failed to introduce sufficient evidence from which the jury could find beyond a reasonable doubt that defendants were not entrapped. The legal principles behind defendants' claim are well settled. Entrapment requires proof that the Government induced defendant to commit the crime and that defendant was not predisposed to commit the crime. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Thoma*, 726 F.2d 1191, 1196 (7th Cir. 1984); *United States v. Kaminski*, 703 F.2d 1004 (7th Cir.1983). To raise the defense a defendant must produce evidence of both the Government's inducement and his own lack of predisposition. Once a defendant accomplishes this, the burden shifts to the Government to prove beyond a reasonable doubt that the defendant was predisposed or that there was no Government inducement. *Thoma*, 726 F.2d at 1196. A defendant may raise the defense by showing that the Government's evidence reveals some inducement and some reluctance on the part of the defendant. There is no requirement that a defendant testify or produce witnesses. *Id.*

 Turning to the facts of this case, we have serious doubts as to whether there was even enough evidence of inducement or defendants' lack of predisposition to raise the defense of entrapment. The only evidence of entrapment before the first sale was Gannon's testimony that he made contact with Manuszak several times to set up the drug purchase, and that he paid $1,200 for what turned out to be 12.3 grams of cocaine. We are not impressed by defendants' argument that Gannon's admission that he made contact with Manuszak demonstrates either a lack of predisposition or Government inducement. Drug dealers are not known to call potential clients and solicit their business, rather a dealer who expects to stay out of jail is careful about to whom he sells. That Gannon made several calls to arrange the sale is also not extraordinary. Drug deals often take time to arrange. We are similarly unimpressed by defendants' claim that $1,200 was such a large amount of money to pay for the cocaine that it amounted to undue inducement. This argument ignores that defendants claimed to be providing 14 grams, not 12.3 grams, and that it was only their own dishonesty that reaped them greater profit. Second, there was evidence that cocaine often sold for $100 a gram, so

$1,200 for more than 12 grams was not unusual. The mere solicitation by Gannon, and the offer of an opportunity to commit the crime, does not show entrapment. *United States v. Townsend*, 555 F.2d 152 (7th Cir.1977), *cert. denied*, 434 U.S. 897; *United States v. Perry*, 478 F.2d 1276 (7th Cir.1973), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 241. The evidence concerning the later transactions was no more persuasive, and to a large degree it was irrelevant. The principal focus in any claimed entrapment case of necessity must be on the first transaction. If there was predisposition on that occasion, as it appears to us there was here, it is difficult to believe that defendants in making the subsequent sales developed a lack of predisposition, which was overcome by Government solicitation.

■ The district court found that defendants had produced enough evidence to permit raising an entrapment defense, but found that the Government produced sufficient evidence to allow the jury to reject that defense. Although we are not persuaded that defendants sufficiently raised the defense, we will nonetheless give them the benefit of the doubt and examine the sufficiency of the Government's evidence. In doing so, we do not reweigh the evidence, but merely determine whether, after viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found either predisposition or a lack of Government inducement beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Properly viewed, the evidence was sufficient to prove defendants' predisposition. Defendants were able to acquire large quantities of cocaine on short notice and exhibited no reluctance in selling the drug to Gannon. Defendants' ability to obtain the drug provided sufficient basis for the jury to infer that defendants were well versed in the drug trade. This inference was bolstered by Gannon's testimony that on April 5 Manuszak obtained more cocaine than needed to satisfy Gannon's request, indicating that Gannon was not defendants' only customer,

and that Manuszak tried to impress Gannon by flashing large amounts of cash. These are hardly the actions of unwary innocents induced by the Government into selling drugs. Rather, defendants were ready and willing to sell cocaine and did so repeatedly. This simply is not a case of entrapment.

## III Sentencing

■ Shortly before trial defense counsel learned that Gannon had himself bought cocaine during the investigation of defendants and that agent Litton knew of Gannon's criminal activity. Litton did not disclose this information to the United States Attorney, and defense counsel learned of the incident only by luck. Defense counsel impeached Gannon with this information. Defense counsel, however, also argued that Litton's misconduct in not reporting this impeaching information would have violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), had they not discovered it before trial, and that the trial court should reduce defendants' sentences to deter such misconduct in the future. The court refused to do so, noting that the agent's misconduct was irrelevant to the sentence defendants should receive.

On appeal defendants do not argue that the trial court abused its discretion in sentencing them and admit that they were not prejudiced by Litton's conduct. Nonetheless, they urge us to remand for resentencing and ask us to "encourage" the district court to consider the alleged attempted *Brady* violation in resentencing. Defendants argue that only by reducing their sentences will agents be deterred from such misconduct.

We have serious reservations about defendants' theory. In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–1197. The

goal of *Brady* "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Id.* Defendants here admit that Litton's non-disclosure did not affect the fairness of their trial, but still seek to gain a windfall and punish society by denying it the full sentence justified by defendants' crimes. Defendants' theory is clearly at odds with the reasoning in *Brady,* and we decline the opportunity to rewrite *Brady* now.

A second reason for rejecting defendants' argument is the weakness of their basic assumption. Defendants' argument rests on the premise that a Government agent who is willing to risk the validity of a criminal conviction by violating *Brady* will be deterred by the possibility that the resulting sentence will be reduced if his misdeed is discovered prior to trial. Defendants offer no support for this proposition, and common sense indicates that it is shaped by defendants' wish to avoid punishment rather than by a realistic assessment of the situation. Without more than defendants' unfounded claim that society will benefit from a reduction in their sentences, we are unwilling to punish society for Litton's misconduct.

For the reasons expressed in this opinion, defendants' convictions and sentences are AFFIRMED.