UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos RIVERA–ESPINOZA,
Defendant–Appellant.

No. 89–1688.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1989.

Decided June 15, 1990.

Thomas M. Durkin, Andrea L. Davis, Matthew M. Schneider, Asst. U.S. Attys., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Standish E. Willis, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., CUDAHY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Charged under a two-count indictment with conspiracy to distribute and distribution of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), defendant-appellant, Carlos Rivera–Espinoza, raised the affirmative defense of entrapment at trial. The jury concluded that he had not been entrapped and convicted him under both counts. Two issues are raised on appeal: (1) whether the evidence admitted at trial was sufficient to establish beyond a reasonable doubt that defendant was not entrapped and (2) whether evidence concerning prior drug transactions in which defendant had been involved was properly admitted during the government's case-in-chief.

## I.

In August of 1986, Rivera–Espinoza met and became friends with Fidel Maldonado. Over the course of the next year, he sold narcotics to Maldonado on various occasions in amounts ranging from one to four kilos. These transactions were undetected by the federal government and form no basis for the underlying conviction. The undetected nature of these transactions, however, was soon to change. While pursuing a drug transaction independent of appellant in Los Angeles in July of 1987, Maldonado was arrested and charged with possession of heroin. The outcome of that arrest was a negotiated plea agreement entered into between Maldonado and the federal government. Under the terms of that agreement, Maldonado agreed to assist the Drug Enforcement Administration with narcotics investigations. In return, the government agreed to dismiss the possession of heroin charge and accept a lesser charge of conspiracy. The prosecution and conviction of Rivera–Espinoza, together with his assertion of the entrapment defense at trial, were the fruits of Maldonado's efforts to assist the DEA under this plea agreement.

Shortly after his return to Chicago from Los Angeles in March of 1988, Maldonado contacted Rivera–Espinoza and arranged to meet with him. During the course of this meeting, Rivera–Espinoza asked Maldonado if he "needed anything." Interpreting "anything" to mean drugs, Maldonado responded he did not at that particular time. At a subsequent meeting in August of that same year, Rivera–Espinoza offered to sell Maldonado ten kilos of cocaine. Maldonado responded that he would contact him in a few weeks regarding the purchase of that cocaine. Between September 6th and September 20th of 1988, various meetings and phone conversations took place between Rivera–Espinoza and Maldonado concerning the former's offers to sell cocaine to Maldonado.[1] Some of these meetings were initiated by the defendant, others by Maldonado.

As was contemplated by everyone except Rivera–Espinoza, the DEA recorded each of the meetings which transpired between these two men. The apartment which Maldonado "occupied"—that is, the apartment in which many of the meetings took place— was equipped by the DEA with sound and video recording devices.[2] Videotapes of these meetings, together with their accompanying written transcripts, were admitted into evidence at trial.[3] These tapes are revealing. The tape of a September 7th meeting shows the defendant delivering fourteen kilos of cocaine to Maldonado. In the written transcript which corresponds to that meeting, defendant reveals that his supplier, a man named Luis who resides in New York, has bodyguards and "gets" people who do not pay. The videotape of a subsequent meeting shows Maldonado making a partial payment of $30,000 (money which had been supplied by the DEA) for the cocaine which Rivera–Espinoza had delivered the previous week. The remainder of the purchase price ($206,000) was to be paid on September 20th, the day Rivera–Espinoza was arrested.

## II.

Rivera–Espinoza's first argument on appeal focuses on the government's burden in

---

1. Rivera–Espinoza offered Maldonado 25 kilos of cocaine for immediate acceptance on consignment on September 6, 1988. Subsequent meetings between the two during the two-week period prior to September 20th were aimed at ironing out the logistics of this transaction regarding both the amount of cocaine which defendant could sell and the schedule by which Maldonado would pay for those goods. Rivera–Espinoza was arrested by DEA agents on September 20th while awaiting Maldonado's arrival at a prearranged location where Maldonado was to pay the balance of the purchase price for the cocaine.

2. This apartment was actually one that had been rented out by the DEA for purposes of this narcotics investigation.

3. Various meetings occurred outside of this apartment. For those meetings, a recording device was placed on Maldonado's body. The audio tapes of these meetings were not admitted into evidence because of their poor quality. Maldonado did, however, testify as to what transpired during these meetings.

rebutting his entrapment defense. Specifically, he argues that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he was not entrapped by the DEA agents into committing the offenses for which he has been convicted. We disagree.

■ The principles surrounding the defense of entrapment are well-established. A defendant who wishes to assert the entrapment defense must produce not only evidence of the government's inducement, but also evidence of his own lack of predisposition. Once this has been accomplished, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was in fact predisposed or that there was no government inducement. *United States v. Fusko*, 869 F.2d 1048, 1052 (7th Cir.1989); *United States v. Hawkins*, 823 F.2d 1020, 1024 (7th Cir.1987); *United States v. Perez–Leon*, 757 F.2d 866, 871 (7th Cir.), *cert. denied*, 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985); *United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984). Defendant's argument with regard to the government's burden focuses on the "predisposition" issue.

■ Predisposition, the "principle element" in the entrapment defense, examines "whether the defendant is an 'unwary innocent' or instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 61, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *Fusko*, 869 F.2d at 1052. The factors relevant in determining whether a defendant was predisposed to commit a crime are:

> (1) the character and reputation of the defendant, including any previous criminal record; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for profit; (4) whether the defendant expressed reluctance to commit the offense which was overcome only by repeated government inducement or persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*United States v. Lazcano*, 881 F.2d 402, 406 (7th Cir.1989), and cases cited therein. For purposes of reviewing whether the government has met its burden in showing predisposition, we will view the evidence in the light most favorable to the government and affirm if any rational trier of fact could have found the requisite predisposition beyond a reasonable doubt. *Perez–Leon*, 757 F.2d at 871; *Gunter*, 741 F.2d at 154. Applying the evidence presented in this case to the factors listed above, we conclude that a rational juror could easily have found the requisite predisposition beyond a reasonable doubt.

■ Rivera–Espinoza's character and reputation do not favor him with regard to the "predisposition" issue. In 1984, he was convicted of conspiring to distribute and distribution of cocaine. Clearly, he is not unfamiliar with "the business" for which he has again been convicted. With regard to the second factor, although the record indicates that Maldonado initiated the contact with the defendant upon his return to Chicago, it does not appear that the suggestion of criminal activity was Maldonado's. Rather, it was Rivera–Espinoza who initiated the conversation about drugs asking Maldonado if he "needed anything." Even if Maldonado did solicit the criminal activity, however, this by itself would not alter our decision. As we have previously noted, "mere solicitation by itself by a government agent is not sufficient to establish the entrapment defense." *Perez–Leon*, 757 F.2d at 872 (citing *Gunter*, 741 F.2d at 154; *United States v. Perry*, 478 F.2d 1276, 1278 (7th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 241 (1973)). The evidence with regard to whether Rivera–Espinoza engaged in this criminal activity for profit is sketchy. The recordings which were made by the DEA reveal that Rivera–Espinoza had a supplier in New York named Luis. Although no mention was made of "profit", we can assume that a person who operates in a chain of cocaine distribution does not do so at a financial loss. Moreover, Rivera–Espinoza told Maldonado during one of their recorded conversations that he had recently purchased a Porsche. Again, although no

mention was made of a "profit", logic instructs that such a purchase would otherwise be difficult if not impossible for Rivera–Espinoza whose legitimate source of income was $4.00/hour at a northside restaurant. The fourth factor is the most important in determining the defendant's predisposition, *Fusko*, 869 F.2d at 1053, and for purposes of our review is conveniently combined with the fifth factor. With regard to government inducement, the position presented by the government was that Rivera–Espinoza was not reluctant to engage in, and, in fact, solicited the criminal activity. Rivera–Espinoza claimed, on the other hand, that it was only after he had been hounded by Maldonado for an extended period of time that he agreed to sell him some cocaine. This, like the other factors considered in this five-factor test, was a question of fact which was properly submitted to the jury. *Cf. United States v. Kaminski*, 703 F.2d 1004, 1007 (7th Cir.1983). The jury, as was its prerogative, chose to believe the testimony presented by the government. On appeal, "we are limited to considering whether the evidence established entrapment as a matter of law, which only occurs when the absence of the defendant's predisposition appears from the uncontradicted evidence." *Id.* (citations omitted). We believe the evidence was sufficient to support the jury's conclusion that Rivera–Espinoza was predisposed to commit the crimes charged and, as such, was not entrapped.

### III.

During the course of its case-in-chief, the government introduced "prior bad act" evidence of defendant's previous involvement with drugs under Federal Rule of Evidence 404(b). Specifically, the testimony of Fidel Maldonado established that he and defendant had engaged in numerous drug transactions in 1986 and 1987. In addition, the government introduced a certified copy of the judgment and commitment order for defendant's 1984 conviction for conspiracy to possess and distribution of cocaine. Each was admitted as being probative of Rivera–Espinoza's predisposition.[4] Focusing on the evidence of previous drug transactions which was introduced via the testimony of Maldonado, defendant argues that the admission of this evidence during the government's case-in-chief constituted prejudicial error which requires a reversal of his convictions.

We need not address the merits of Rivera–Espinoza's allegation, however, in that he did not raise a Rule 404(b) objection to the admission of Maldonado's testimony at trial. In light of his failure to preserve the issue for appeal, he cannot now be heard to complain absent a showing of plain error. *United States v. Field*, 875 F.2d 130, 134 (7th Cir.1989). As we have previously noted, a plain error is one that results in an "actual miscarriage of justice." *United States v. Carroll*, 871 F.2d 689, 692 (7th Cir.1989) (citation omitted). To state it differently, plain error "'implies the conviction of one who but for the error probably would have been acquitted.'" *Field*, 875 F.2d at 135 (quoting *United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989)). It is apparent to us from the evidence which was presented against Mr. Rivera–Espinoza that this does not constitute such a situation.

### IV.

For all of the foregoing reasons, the convictions of the defendant are AFFIRMED.

---

**4.** Prior to trial, defendant submitted a Motion in Limine to exclude the introduction of any evidence regarding his 1984 conviction. This motion was denied by the district judge. No challenge has been made to the propriety of that denial on appeal.