**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Pierre G. CASANOVA, Defendant-Appellant.**

**No. 91–3233.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1992.

Decided Aug. 7, 1992.

Matthew V. Richmond, Asst. U.S. Atty. (argued), Office of U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Thomas M. Croke (argued), Brookfield, Wis., for defendant-appellant.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Pierre G. Casanova, a federally licensed firearms dealer, sold several guns to a government informant and a government agent, both who posed as convicted felons. After a jury trial, Casanova was found guilty of eleven counts relating to aiding and abetting a convicted felon in the receipt of a firearm, the sale of a firearm to a convicted felon, the failure to complete an ATF Form 4473 as a licensed dealer, the sale of a firearm without the making of an entry in a firearms acquisition and disposition record as a licensed dealer, and the making of a false entry in such a record. The district court set aside the guilty verdicts on three counts and entered a judgment of acquittal on those counts. The court also reduced five counts from felonies to misdemeanors. Casanova was sentenced under the Sentencing Guidelines to a term of 33 months imprisonment. He appeals his convictions on the basis of the district court's refusal to instruct the jury on the defense of entrapment. He also appeals an enhancement of his sentence for obstruction of justice. We affirm.

On July 2, 1990, a federal firearms license was issued to Casanova's business. Shortly after the license was issued, James Jones was arrested and charged with being a felon in possession of a firearm. Jones told Alcohol, Tobacco and Firearms ("ATF") agents that he had purchased the handgun from Casanova in the prior year because Casanova did not require him to complete any paperwork. Jones agreed to cooperate with the ATF in an investigation of Casanova.

An ATF agent conducted a preliminary investigation of Casanova as required by ATF policy. During that investigation, the agent was not permitted to make undercover purchases of firearms and was allowed only minimal undercover contact with Casanova. A full investigation was not allowed under agency policy until illegal activity was substantiated. Accordingly, on July 18, Jones was instructed to talk with Casanova at his store about the purchase of firearms and to tell Casanova that he was a convicted felon. The plan was carried out. Casanova offered to sell a 9 mm pistol to Jones for $500, then Jones informed Casanova that he could not sign the required paperwork for the purchase because he was a convicted felon. An ATF agent monitored the transmitter which Jones was wearing and heard Jones inform Casanova of his felon status. The meeting concluded with an understanding that Casanova would sell Jones the firearm a few days later.

Following the monitored conversation, a full investigation was approved. An undercover ATF agent accompanied Jones to Casanova's store on July 30. Jones introduced the agent to Casanova as a friend, and Casanova told them to return in an hour because the gun he had previously agreed to sell to Jones was not in the store. As requested, the agent and Jones returned, but again the gun was not available. This time in the presence of an ATF agent Jones again advised Casanova that he was a convicted felon.

The next day, on July 31, Jones and the agent returned to Casanova's store, and Jones asked about buying a MAC 10 pistol. Casanova indicated that he could procure the gun for Jones, but that it would not be fully automatic. Jones then purchased the 9 mm pistol and an ammunition clip from Casanova for $500. He placed the loaded gun down the front of his pants and concealed it with his shirt in Casanova's presence. Jones did not fill out an ATF Form

4473,[1] and Casanova did not record the receipt or distribution of the firearm in the bound book, kept for that purpose, as required by federal regulations.

On August 9, Jones went to Casanova's store and inquired about purchasing a fully automatic MAC 10 pistol with a silencer. Casanova told Jones that converting the gun to a fully automatic could be risky. He also told Jones that because Jones was a convicted felon he would have to find someone to purchase the gun for him who was at least twenty-one years old and did not have any felony convictions.[2] Casanova offered to find someone with those qualifications, but was unable to locate someone after making several telephone calls. Later that day, however, Jones returned to the store and informed Casanova that he had found someone to purchase the pistol. Casanova replied that he would sell a MAC 10 pistol to Jones for $800.[3]

Undercover ATF agent Paul Harding accompanied Jones to Casanova's store on August 21. They discussed with Casanova the conversion of a MAC 10 pistol to fully automatic, and Agent Harding asked Casanova about a small pistol. Casanova replied that paperwork would have to be completed for its purchase because he had logged the pistol in his bound book. When Agent Harding asked about a fully automatic MAC 10 and a weapon with a silencer, Casanova replied "No." However, Casanova offered to sell them an AK–47 rifle "off-paper"—without the required paperwork—for $800. Casanova did not have the rifle in his possession, and Agent Harding gave Casanova his digital beeper number so that Casanova could call to inform him of its availability.

Agent Harding then showed Casanova three drivers licenses, which contained fake names and information, and photographs of individuals other than Agent Harding. He laid a license with the name Bradley J. Morgan on the counter. Casanova asked whether Morgan could be tracked down so that the federal authorities could not determine who had purchased the firearm. Agent Harding indicated that Morgan was dead. Casanova replied, "O.K., well I just gotta think how tah (sic) ... cover it." With regard to the sale of the AK–47, Casanova advised Agent Harding that the sale would be "see ya later, cash and carry." Agent Harding told Casanova that his name was as bad as Jones's, meaning that he was a convicted felon, for purposes of filling out the ATF form. Casanova told Agent Harding not to negotiate with him when Casanova's father was in the store. He also asked again whether anyone knew that Morgan was "no longer around."

On August 22, Agent Harding called Casanova to ask whether he had acquired the AK–47 rifle. Casanova replied that he would have the rifle in a few days. When Agent Harding asked whether he could acquire the gun sooner, Casanova contacted his supplier and told Agent Harding that he could have the rifle that evening and that the gun would cost $800. Casanova also offered to sell three other guns to Agent Harding. When Agent Harding asked Casanova whether the transactions would be "off-paper," Casanova replied, "[Y]eah, more or less." Agent Harding called Casanova later that day, but Casanova still had not acquired the AK–47 rifle.

Approximately an hour later, Casanova paged Agent Harding. Agent Harding called Casanova, and Casanova informed him that he would have the rifle later that evening. Casanova noted that his supplier was also trading two other guns, and he offered to sell them to Agent Harding. Casanova stated that his supplier was unaware of the illegal nature of the sales.

---

1.  Casanova asserts that it was unnecessary for Jones to fill out a form because the gun was Casanova's personal gun which had not been logged into the books of the corporation.

2.  At trial, an ATF agent characterized this as a "straw purchase," an illegal method of purchase which is designed to get around the federal firearms regulations.

3.  Jones's conversations with Casanova on July 18, 30 and 31, and August 9 were tape-recorded, but were not transcribed due to their poor quality. ATF agent Paul Harding's subsequent conversations with Casanova were recorded and transcribed.

Casanova paged the agent again an hour later to inform him that he would have the rifle at 8:00 p.m. and that the Morgan drivers license could be used to complete the ATF form.

On August 23, Agent Harding and Jones went to Casanova's store and purchased the AK–47 rifle from Casanova for $800 using the Morgan drivers license for the ATF form. When Agent Harding asked whether an employee of Casanova, who made a photocopy of the license, would notice that the photograph on the license did not belong to the agent, Casanova replied, "What are you kidding me? I hire the handicapped." Casanova again asked whether Morgan was dead, and instructed that the serial numbers on the guns should be removed so that they could not be traced to him. They also discussed the purchase of several revolvers. Casanova told Agent Harding that it would look suspicious if one purchaser bought three guns all at once, and agreed that the guns should be purchased on two days.

On August 27, Agent Harding called Casanova to ask about the revolvers but Casanova told him that he could not get the guns because he had no money. Agent Harding informed Casanova that he had "turned" the AK–47 rifle and received "an ounce" for it, and that the guns were headed to Mexico. Arrangements were made for Agent Harding's purchase of four firearms for $3,000. Casanova stated that the Morgan drivers license could be used to complete the ATF form, but that it should not be used again for a month so as not to draw the attention of the federal authorities. They discussed obtaining silencers for firearms, and Casanova stated that he knew how to make them but that they were "into dangerous shit." He noted the "Feds know" about people who sought silencer kits. Agent Harding assured Casanova that the serial numbers on the firearms had been removed, and Casanova stated that, "All I need is one loose lip.... That's the end of me then." He told Agent Harding to have the money pre-counted so that others in the store would not be suspicious about what was being bought.

On August 29, Agent Harding called Casanova and Casanova told him that the ATF form that he had completed on August 23 for the AK–47 rifle had to be corrected because the printed name and the signed name were not the same. Casanova stated, "Well, with what we're doing.... There can't be any slips.... I'm just doing it to cover everything perfect.... Christ, that would nail us cut and dry.... And then I go down." Agent Harding and Jones went to the store, corrected the form, paid Casanova $3,000, completed another ATF form with the Morgan drivers license, and left with the four firearms. ATF agents then entered the store and executed a search warrant.

At trial, an ATF agent testified that Casanova admitted during the execution of the warrant that he knew it was wrong to have sold firearms to a convicted felon, that it was wrong to have used the Morgan drivers license to conduct the sales, that he knew the license did not belong to Agent Harding, and that he had engaged in the illegal activity to make a "quick buck."

Casanova testified that Jones did not inform him that he was a convicted felon, that he discussed the sale to Jones of a semi-automatic pistol with a silencer and suggested to Jones to find a straw purchaser in order to get him out of the store, and that he told Agent Harding and Jones that they could get the parts to convert a gun to fully automatic from a hardware store in order to change the subject. He claimed that the ATF agents pressured him into illegally selling the firearms, and that he had financial difficulties in July and August 1990 and wanted to make money to pay his bills. Casanova also testified that he had prior misdemeanor convictions.

I

■ Casanova argues that the district court erred in refusing to instruct the jury on entrapment. The district court's refusal to instruct the jury on entrapment is reviewed *de novo*. *United States v. Marren*, 890 F.2d 924, 930 (7th Cir.1989). A defendant is entitled to a particular theory of defense instruction if: (1) the proposed in-

struction is a correct statement of the law; (2) the defendant's theory of defense is supported by the evidence; (3) the defendant's theory is not a part of the government's charge; and (4) the failure to include an instruction on the theory of defense would deny the defendant a fair trial. *Id.; United States v. Shukitis,* 877 F.2d 1322, 1330 (7th Cir.1989); *United States v. Douglas,* 818 F.2d 1317, 1320–21 (7th Cir. 1987). Applying this theory to the present case, we find that the district court properly refused to instruct the jury on entrapment because Casanova failed to satisfy the second prong of the test: his requested instruction is not supported by the evidence.

■ Proof of two elements are required to support an entrapment defense: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct. *Mathews v. United States,* 485 U.S. 58, 62–63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *United States v. Sababu,* 891 F.2d 1308, 1332 (7th Cir.1989); *Marren,* 890 F.2d at 929. "A defendant is entitled to an entrapment instruction whenever 'there exists evidence sufficient for a reasonable jury to find in his favor.' " *Id.* (quoting *Mathews,* 485 U.S. at 61, 108 S.Ct. at 887). The defendant has the burden to produce sufficient evidence upon which the jury could find government inducement and lack of predisposition. *Id.*

Predisposition, the principal element in the defense of entrapment, "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews,* 485 U.S. at 63, 108 S.Ct. at 886 (citation omitted); *United States v. Rivera–Espinoza,* 905 F.2d 156, 158 (7th Cir.1990). The factors relevant in determining the predisposition of the defendant include:

(1) the character or reputation of the defendant; (2) whether the suggestion of criminal activity was made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant ex-

pressed reluctance to commit the offense which was overcome by government persuasion; and (5) the nature of the inducement or persuasion applied by the government.

*Marren,* 890 F.2d at 930; *Shukitis,* 877 F.2d at 1331; *United States v. Perez–Leon,* 757 F.2d 866, 871 (7th Cir.1985). "The most important factor in determining a defendant's predisposition is whether the defendant evidenced a 'reluctance to engage in the criminal activity that was overcome only by repeated government inducement.' " *Marren,* 890 F.2d at 930 (quoting *Perez–Leon,* 757 F.2d at 871); *United States v. Beverly,* 913 F.2d 337, 356 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991).

■ Applying these factors to this case, there is insufficient evidence in the record for a reasonable jury to find that Casanova lacked a predisposition to engage in the criminal conduct. With respect to the first factor, the defendant's character or reputation, Casanova acknowledges that he has several prior misdemeanor convictions, including operating a vehicle after revocation, theft of a snowmobile, disorderly conduct and criminal damage to property. The nature of these offenses and their occurrence five years prior to the firearms offenses diminishes to some extent the adverse effect of Casanova's criminal record. Nonetheless, the record discloses a less than law abiding background.

With regard to the second factor, whether the government suggested the criminal activity, it is true that Jones, acting as a government informant, asked Casanova about purchasing a firearm as a convicted felon. However, Casanova readily agreed to sell a pistol to Jones even after he had been informed on two occasions of Jones's felon status. The consummation of the sale took almost two weeks because the gun was not available before that time and not because Casanova was reluctant to sell the gun to Jones. Therefore, the government merely provided Casanova the opportunity to commit the crime. *See Jacobson v. United States,* — U.S. —, —, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 147 (1992)

(where defendant promptly avails himself of a criminal opportunity it is unlikely that an entrapment defense would warrant a jury instruction); *Perez–Leon*, 757 F.2d at 872 (mere solicitation by the government is insufficient to show entrapment); *United States v. Rodgers*, 755 F.2d 533, 550 (7th Cir.) (fact that government provides opportunity or solicits a predisposed defendant to commit a crime does not raise an entrapment defense), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985); *United States v. Gunter*, 741 F.2d 151, 154 (7th Cir.1984) (same).

As to the third factor, whether the defendant engaged in the criminal activity for profit, Casanova admitted to an ATF agent that he engaged in the illegal activity to make a "quick buck."

The fourth and fifth factors, whether the defendant was reluctant to engage in the criminal conduct and the nature of the government's inducement, can be considered together. *Marren*, 890 F.2d at 930; *United States v. Fusko*, 869 F.2d 1048, 1053 (7th Cir.1989). As we noted, Casanova agreed to sell a pistol to Jones after he was informed of Jones's felon status on two occasions. "[T]he principal focus ... of necessity must be on the first transaction." *Id.* (citation omitted); *Gunter*, 741 F.2d at 154. Although the defendant's subsequent conduct, after the initial solicitation, may also be considered, *United States v. Roland*, 748 F.2d 1321, 1327 (2d Cir. 1984), evidence concerning later transactions is largely irrelevant. *See Gunter*, 741 F.2d at 154. Casanova expressed some reluctance to sell various firearms to Agent Harding, but offered or agreed to sell other firearms to him "off-paper" or using the Morgan drivers license to complete the ATF forms. That Agent Harding and Jones contacted Casanova several times during July and August, in person and by telephone, is not determinative. *See id.* (fact that government informant made several telephone calls to arrange a sale of

illegal drugs was not extraordinary given that such deals take time to arrange). In all, Casanova illegally sold six firearms to Jones and Agent Harding for $4,300.[4]

Further evidence of Casanova's lack of reluctance to engage in the criminal conduct includes: Casanova's willingness to find a "straw man" to purchase a gun for Jones; his willingness to continue negotiations after he was informed that the AK–47 had been traded for illegal drugs; his structuring of the firearms transactions so as to prevent their detection by the authorities, i.e., instructing that the serial numbers on the guns be removed so that they could not be traced to him, requesting repeated assurances whether Morgan could be found, using the Morgan drivers license to complete ATF forms and noting that it should not be used for a while so that the federal authorities did not become suspicious, asking Agent Harding to redo the incorrect ATF form, and asking that negotiations not take place in the presence of his father; his candid discussions about silencers and how to make them; his statement that he might have to "bounce a check" to buy guns for Jones and Agent Harding; his willingness to contact Agent Harding by calling his digital beeper; his willingness to procure guns for Agent Harding and Jones; and his willingness to make numerous appointments in order to conclude the transactions. There is nothing in the record to show that Casanova possessed a reluctance to commit the offenses which was "overcome only by repeated government inducement or persuasion." *Perez–Leon*, 757 F.2d at 871.

As the district court noted, the guns were sold at market price and therefore the sales were no inducement to Casanova. *See Gunter*, 741 F.2d at 153–154 (evidence that drugs were sold for market value indicated there was no unusual inducement). "A person who takes advantage of an ordinary opportunity to commit criminal acts—

---

4. Casanova admits that he engaged in the firearms sales, but denies that he knew Jones was a convicted felon. With regard to the issues of predisposition and inducement, matters of credibility are within the sole province of the jury.

*Fusko*, 869 F.2d at 1054. Casanova's conviction indicates that the jury resolved the conflicting testimony in favor of the government. *See Perez–Leon*, 757 F.2d at 872.

not an extraordinary opportunity, the sort of that might entice an otherwise law-abiding person—is not entrapped. Such a person is predisposed in the sense that the ordinary profits of crime are incentive enough to him to commit crimes ... all that is wanting is the opportunity." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991). "When a person accepts a criminal offer without being offered extraordinary inducements, he demonstrates his predisposition to commit the type of crime involved." *Id.* at 718.

■ Turning to the second element of the entrapment defense, government inducement, the defendant has the burden to "put forth evidence showing that he would not have committed the crime had the particular attraction or lure that the government held out not existed." *Marren*, 890 F.2d at 931; *Fusko*, 869 F.2d at 1053; *United States v. Manzella*, 791 F.2d 1263, 1269 (7th Cir.1986). We have held, however, that we need not determine whether improper government inducement was present where the evidence is more than sufficient to establish that the defendant was not entrapped but possessed the requisite predisposition to commit the crimes. *United States v. Carrasco*, 887 F.2d 794, 816 n. 29 (7th Cir.1989) (citing *Perez–Leon*, 757 F.2d at 871). In any event, our review of the record leads us to believe that "the inducement here—if any—was so minimal as not to tempt the defendant to commit a crime that he otherwise would not have committed." *United States v. Hawkins*, 823 F.2d 1020, 1025 (7th Cir.1987).

Given the obvious willingness of Casanova to violate federal firearms laws and the lack of any government inducement to do

so—beyond offering market price for the guns—no reasonable jury could have found entrapment. Therefore, it was not error for the district judge to refuse to give an entrapment instruction.

## II

At sentencing, the district court found, in accordance with the presentence report's recommendation, that Casanova had testified falsely at trial and that a two-level enhancement for obstruction of justice was warranted under § 3C1.1 of the Sentencing Guidelines.[5] In addition, Casanova was denied a two-level reduction for acceptance of responsibility. *See* Guideline § 3E1.1, Application Note 4.

■ The district court's finding that a defendant obstructed justice is a finding of fact, *United States v. Feekes*, 929 F.2d 334, 338 (7th Cir.1991), which will be accepted unless it is clearly erroneous. *See United States v. Cherry*, 938 F.2d 748, 758 (7th Cir.1991) (obstruction of justice based on defendant's false testimony at trial); *United States v. Davis*, 938 F.2d 744, 747–48 (7th Cir.1991) (same); *United States v. Contreras*, 937 F.2d 1191, 1194 (7th Cir. 1991) (same); *United States v. Rodriguez*, 929 F.2d 1224, 1229 (7th Cir.1991) (same). The district court's conclusion that a defendant testified falsely at trial is a credibility determination as well as an assessment of the facts which are afforded deference. *Cherry*, 938 F.2d at 758.

Under Application Note 1 of § 3C1.1 of the Guidelines, a two-level enhancement of an offense level can be imposed for any attempt by the defendant to obstruct the

---

5. The government acknowledges that the district judge failed to specifically indicate what testimony of Casanova it found to be false, but contends that it was clear that the district judge was referring to Casanova's testimony that he was not aware that Jones was a convicted felon. The district judge's statement that, "I don't have any doubt that there was falsehood testified from the stand" was sufficient. *See United States v. Davis*, 938 F.2d 744, 747 (7th Cir.1991) (district judge's finding that the defendant "attempted to mislead the jury as to his knowledge and participation" in the crime was sufficient finding that defendant was less than truthful

during his trial testimony); *United States v. Contreras*, 937 F.2d 1191, 1194 n. 2 (7th Cir. 1991) (district court's finding that defendant was "not truthful on the witness stand" was sufficient); *see also United States v. Lozoya–Morales*, 931 F.2d 1216, 1218–19 (7th Cir.1991) (resentencing required where district court failed to make an independent factual finding that the defendant had committed perjury in his trial testimony and based the obstruction of justice adjustment entirely upon jury's verdict which did not establish that the defendant had lied).

**378**

administration of justice by providing a denial of guilt under oath which constitutes perjury. Perjury involves the belief and knowledge of the suspected perjurer. *See* 18 U.S.C. § 1621. Although the enhancement is not triggered by the mere denial of guilt, enhancement is triggered if the defendant "testifies untruthfully ... concerning a material fact." *Cherry*, 938 F.2d at 758.

Casanova testified that Jones never informed him that he was a convicted felon. This testimony is contrary to an ATF agent's testimony that Casanova admitted that he knew it was wrong to have sold a firearm to a convicted felon, and to the testimony of Jones and an ATF agent that Jones informed Casanova on two occasions that he was a convicted felon.

■ Casanova argues that his denial of knowledge of Jones's felon status did not rise to the level of perjury. He asserts that the Guideline requires egregious conduct, and not merely a denial of other witnesses' testimony. Otherwise, he reasons, there would be a chilling effect on the defendant's right to testify on his own behalf. We rejected this argument in *Contreras*, 937 F.2d at 1194. "'Assuming, *arguendo*, that the sentencing judge's consideration of defendants' untruthfulness in testifying has any chilling effect on a defendant's decision to testify falsely, that effect is entirely permissible. There is no right to commit perjury.'" *Id.* (quoting *United States v. Grayson*, 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–18, 57 L.Ed.2d 582 (1977)). Accordingly, we held that, "Guideline § 3C1.1 does not impinge upon any constitutionally protected right when applied to increase the sentence of a defendant who testifies untruthfully at trial." *Id.* at 1195. The district court's finding that Casanova obstructed justice is not clearly erroneous.

■ Based upon the district court's determination that the circumstances warranted an enhanced sentence for Casanova's obstruction of justice, the court acted within its discretion in refusing a downward adjustment for acceptance of responsibility under Guideline § 3E1.1. *Feekes*,

929 F.2d at 338; *see* Guideline § 3E1.1, Application Note 4 (conduct resulting in an enhancement under § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct).

Therefore, we AFFIRM Casanova's conviction and sentence.