9 F.3d 113
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian GREEN, Defendant-Appellant.
 No. 92-3612.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1993.
Decided Nov. 3, 1993.
 
 Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Brian Green, a U.S. Postal Service employee, was arrested by undercover postal inspectors for selling cocaine. Clara Blanchard, also a postal service employee, was a postal inspector informant who contacted Green about purchasing cocaine.
 
 
 2
 Green says that he was entrapped into selling cocaine by the attractions of Clara Blanchard. Following the submission of evidence at trial the district court refused to allow Green to argue the issue of entrapment to the jury and declined to give an entrapment instruction. This was an error, Green asserts. The district court also refused to grant a downward departure for acceptance of responsibility when imposing sentence--another error Green claims.
 
 Entrapment
 
 3
 A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonably jury to find in his favor. Mathews, 485 U.S. at 63. An instruction is appropriate where defendant proposes a correct statement of the law; his theory of defense is supported by the evidence; his theory is not part of the charge; and noninclusion of the jury instruction as to defendant's theory of defense would deny him a fair trial. United States v. Mahkimetas, No. 92-2633 (7th Cir. April 13, 1993), 1993 U.S.App. Lexis 7722, citing United States v. Marren, 890 F.2d 924, 929 (7th Cir.1989). The entrapment instruction should be given where the evidence would permit a rational jury to infer that defendant was entrapped into committing the crime. United States v. Evans, 924 F.2d 714, 716 (7th Cir.1991).
 
 
 4
 The government may not implant in an innocent person's mind the disposition to commit a crime and then induce the commission of the crime. Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). A valid entrapment defense has two elements: (1) government inducement of the crime, and (2) a lack or predisposition on the part of the defendant to engage in criminal conduct. Mathews v. United States, 485 US. 58, 63 (1988).
 
 
 5
 Predisposition, which is the principal element of entrapment, focuses on whether defendant readily availed himself of the opportunity to commit the crime. Mathews, 485 U.S. at 63. Factors considered in determining whether predisposition exists include: (1) defendant's character or reputation; (2) whether the suggestion of criminal activity was originally made by the government; (3) whether defendant was engaged in criminal activity for a profit; (4) whether defendant evidenced a reluctance to commit the offense, overcome only by government persuasion; and (5) what type of inducement or persuasion was offered by the government. In reviewing the denial of a jury instruction on entrapment, this court views the record de novo to determine the sufficiency of the evidence in each respect. Marren, 890 F.2d at 930.
 
 
 6
 In regard to Green's character or reputation, the evidence showed that he was familiar with the cocaine business. He used cocaine two or three times a week. He typically obtained cocaine by beeping his supplier, waiting for the return call, then meeting the supplier. In addition, Green told the police (later denied at trial) that he planned to sell the drugs found in his pocket at the time of his arrest. Green's "ability to acquire drugs and familiarity with drug terms are probative of [his] predisposition to engage in drug distribution." United States v. Van Slyke, 976 F.2d 1159, 1163) (8th Cir.1992).
 
 
 7
 Concerning the question of whether the suggestion of criminal activity was originally made by the government, Clara Blanchard, acting on behalf of postal inspectors, initiated the contact when she approached Green and asked him to sell drugs to her. Nevertheless, whether the government initiated the contact with Green is not dispositive (see United States v. Fadel, 844 F.2d 1425, 1433 (10th Cir.1988)), particularly where defendant readily agreed to sell the drugs. See United States v. Casanova, 970 F.2d 371, 375-76 (7th Cir.1992) (government informant approaches defendant about purchasing a firearm as a convicted felon).
 
 
 8
 In regard to whether Green was engaged in criminal activity for a profit, he earned $20 for the first delivery and $10 for the second delivery. These are hardly extraordinary sums which might tempt an innocent person to stray from his usual law-abiding behavior.
 
 
 9
 The fourth and fifth predisposition factors (whether defendant evidenced a reluctance to commit the offense, overcome only by government persuasion; and what type of inducement or persuasion was offered by the government) may be considered together. United States v. Casanova, 970 F.2d 371, 376 (7th Cir.1992).
 
 
 10
 Green showed little or no reluctance. On December 5, 1991, Green met Blanchard for the first time, when he happened to be present during an undercover drug transaction with John Davis. They spoke for a few minutes. On December 9, 1991, Blanchard telephoned Green at work and asked to buy cocaine. Despite their cursory introduction a few days earlier, Green readily agreed to supply Blanchard with drugs. The transcript of the December 9, 1991 recorded conversations states:
 
 
 11
 "BLANCHARD: * * * I was wondering if you could do something for me when I get off, you know, when you get off work.
 
 
 12
 DEFENDANT: Uh huh, about what time."
 
 
 13
 Green testified that he knew "do something for me" meant purchase cocaine and he readily agreed. When they later met at Davis', however, it was Davis who handled the sale of the drugs. Green claims that he was reluctant because he did not know Blanchard or the undercover postal inspector Arthurine Jones. When Green spoke with Blanchard on the telephone he says he was "thinking about" selling her cocaine, but later he changed his mind because he was "skeptical" since he was not sure how Blanchard got his number at work. "I had suspicions. I didn't have suspicions that she was an agent or anything, I just couldn't figure it out." Nevertheless, "second thoughts following initial enthusiasm do not establish entrapment." United States v. Evans, 924 F.2d 714, 716 (7th Cir.1991). Green's hesitation was "no more than the normal hesitation that occurs in any situation in which a dealer enters into a new relationship with a prospective buyer." United States v. Hawkins, 823 F.2d 1020, 1025 (7th Cir.1987). Moreover, defendant showed no reluctance when he sold Blanchard and an undercover postal inspector drugs on January 9, 14, and 16, 1992.
 
 
 14
 Green's "ready commission of the criminal act amply demonstrates the defendant's predisposition." Jacobson, 112 S.Ct. at 1541; see also Hawkins, 823 F.2d at 1025. Evidence of defendant's lack of reluctance also included his easy willingness to contact his supplier by calling his beeper; willingness to make several appointments for the purchases; structuring the drug transactions so as to prevent their detection. See Casanova, 970 F.2d at 376.
 
 
 15
 Nevertheless, Green maintains that he was induced by the government's offer of a relationship with Clara Blanchard. However, Green testified that Blanchard never promised him anything and never went on a date with him, but she did say "we would get together." Green acknowledged that Blanchard did nothing to indicate she was interested in a relationship with him except to say, "That too maybe." The transcript of the January 9, 1992 recorded telephone conversation states:
 
 
 16
 "DEFENDANT: I didn't know. I thought you was calling me cause you wanted to get with me or something.[1]
 
 BLANCHARD: That too maybe.[2]
 
 17
 DEFENDANT: Uh huh."
 
 
 18
 With nothing more to entice him than "that too maybe," Green still hoped he could start a personal relationship with Blanchard, without letting his fiancee know about it. Green also testified that while he was not sure that Blanchard was interested in him, he thought that he at least "had a chance" and "I was trying to pursue her. I was continuing to pursue her." Green says he noticed the way Blanchard looked at him. "I saw her smiling or something or a certain look or something," which he hoped was flirting.
 
 
 19
 The "inducement here--if any--was so minimal as not to tempt the defendant to commit a crime that he otherwise would not have committed." United States v. Hawkins, 823 F.2d 1020, 1025 (7th Cir.1987). Green himself admits that Blanchard never telephoned him at home, never dated him and never spoke to him about starting a romantic relationship. Apart from the first drug transaction when Blanchard had almost a one minute conversation with Green, Blanchard remained in the car and barely spoke with Green while the undercover inspector made the subsequent drug buys.
 
 
 20
 Green maintains that Blanchard gave him her phone number and that he talked to her twice in unrecorded conversations which did not involve drugs. Even if Blanchard gave defendant her telephone number and he called her twice, she never enticed him. We agree with the district court that such conduct "does not even rise to the slightest level of importuning him or promising of sexual favors or something. He is the one who has got it in his head." It was Green, not Blanchard, who was seeking to initiate a social relationship.
 
 
 21
 The record contains no indication that Green was offered an "extraordinary opportunity, the sort ... that might entice an otherwise law-abiding person" to commit a crime. Casanova, 970 F.2d at 377. See United States v. Young, 954 F.2d 614, 617 (10th Cir.1992) (undercover female informant "became friendly with a male defendant, who had hopes that the relationship would develop into a romantic one; court finds insufficient evidence of inducement where relationship was not "such that defendant would feel compelled to respond affirmatively" to the informant's offer to sell marijuana). Cf. United States v. Cuervelo, 949 F.2d 559 (2d Cir.1991) (undercover agent engaging in sexual relations with defendant was found to be outrageous conduct).
 
 
 22
 The district court properly refused to instruct the jury on entrapment because such an instruction was not supported by the evidence.
 
 Sentencing--Acceptance of Responsibility
 
 23
 Green also argues that the district court erred when, at sentencing, it refused to grant a two-level reduction for acceptance of responsibility. U.S.S.G. Sec. 3E1.1. He argues that an entrapment defense should not always be inconsistent with a finding of acceptance of responsibility. Green points out that no enhancement was given for obstruction of justice. See Guideline Sec. 3E1.1, Application Note 4 (conduct resulting in an enhancement under Sec. 3C1.1 ordinarily indicates that defendant has not accepted responsibility for his criminal conduct).
 
 
 24
 The district court acted within its discretion in refusing a downward adjustment for acceptance of responsibility. Casanova, 970 F.2d at 378. The court noted that Green's testimony was riddled with inconsistencies and "the conclusion that he perjured himself was almost unavoidable." While Green has the right to attempt to present an entrapment defense, the trial judge here adequately explained his reasons in denying the two-level reduction for acceptance of responsibility. See United States v. Haddad, 976 F.2d 1088 (7th Cir.1992); United States v. Leiva, 959 F.2d 637 (7th Cir.1992). The district court's refusal to give a downward adjustment for acceptance of responsibility was not an abuse of discretion.
 
 
 25
 For these reasons, the conviction and sentence of Brian Green are AFFIRMED.
 
 
 
 [1]
 Blanchard testified that she believed this meant, "He assumed, I guess, that I wanted to go on a date with him or something." She responded "That too maybe" only as "general conversation. She had never dated someone involved in an undercover investigation because she was "not into it for that." The Postal inspectors had told Blanchard they were "not supposed to" date people being investigated
 
 
 [2]
 Green testified that he thought Blanchard said, "That too, baby."